## Berman & Sons, Inc. *vs.* Cynthia Jefferson.

Essex.    September 14, 1979. — November 8, 1979.

Present: Hennessey, C.J., Quirico, Braucher, Liacos, & Abrams, JJ.

*Landlord and Tenant,* Habitability, Lease as contract, Rent, State Sanitary Code. *Housing.*

The obligation of a tenant to pay full rent abates as soon as the landlord has notice that the premises fail to comply with the requirements of the implied warranty of habitability; the landlord's lack of fault and his reasonable efforts to repair do not prolong the tenant's duty to pay full rent. [198]

A landlord must comply at least with minimum standards prescribed by the State building and sanitary codes in order to satisfy the implied warranty of habitability. [198-201]

The duties of a landlord under the State Sanitary Code cannot be waived, bargained away, or qualified by customary practice; the code puts a landlord on notice that he must supply adequate heat and hot water, and an award of damages to a tenant who did not vacate her apartment for breach of the implied warranty of habitability in this respect was affirmed. [201-202]

As a matter of common law, rent abatement begins when notice of a defect in the premises is given by the tenant to his landlord or previously comes to the landlord's knowledge, not at a reasonable time after notice nor after a reasonable time to repair. [202-205]

Summary process.    Writ in the District Court of Peabody dated January 18, 1977.

On appeal to the Superior Court the action was heard by *Adams,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Mitchel S. Ross* for the plaintiff.

*Joseph S. Murphy* for the defendant.

*Philip. S. Lapatin,* for Greater Boston Real Estate Board, amicus curiae, submitted a brief.

*Susan C. Cohen, Richard C. Allen, Gary Bellow, Barbara Hayden Fitts, Marc Lauritsen, Bella Schnall, Carole Wagan, Albert W. Wallis, & James H. Wexler,* for a coalition of legal assistance groups, amicus curiae, submitted a brief.

LIACOS, J.  Cynthia Jefferson (tenant) leased for one year, beginning March 1, 1976, at $245 a month an apartment in Peabody from Berman & Sons, Inc. (landlord).  From late August until October 8, 1976, a series of breaks in underground heating pipes caused the tenant to receive intermittent heat.  The landlord repaired each leak promptly.  On October 8, the pipe burst completely and the tenant was without heat until the pipe was repaired on October 20.  Furthermore, from time to time, the apartment was without adequate hot water.  These failures continued sporadically through June, 1977.  The tenant withheld $35 from her November, 1976, rent.  The landlord returned the check and in January, 1977, brought an action for summary process in the District Court of Peabody.  The tenant answered and counterclaimed, alleging, inter alia, breach of the implied warranty of habitability.  The judge denied the landlord's claim for possession and awarded the tenant $310 damages.  In February, 1977, the landlord appealed to the Superior Court, which heard the case on written stipulations.  On October 23, 1978, the judge entered findings of fact, conclusions of law, and an order awarding the tenant $310 for breach of the warranty of habitability.  The landlord appealed from the judgment.  We granted the landlord's application for direct appellate review.  We affirm the judgment.[1]

The Superior Court judge found there was insufficient evidence to conclude that the landlord acted intentionally,

---

[1] We have been aided in our consideration of the issues raised by this appeal by amicus briefs filed by the Greater Boston Real Estate Board and a coalition of legal assistance groups led by the Housing Allowance Project, Inc., and the Massachusetts Law Reform Institute.

negligently, or in bad faith.[2]  He found and ruled that the
losses of heat and hot water were material breaches of the
warranty of habitability.  The judge ruled further that the
tenant is allowed to abate the rent from the date the land-
lord had notice of the breach of the warranty of habitabili-
ty.  We must decide (1) whether a tenant must pay full rent
without abatement when the landlord, acting without fault
or bad faith, fails to maintain a dwelling in habitable condi-
tion and (2) whether the tenant's obligation to pay full rent
persists until the landlord has had a reasonable time to re-
pair the defect.  We hold that the tenant's obligation abates
as soon as the landlord has notice that premises fail to com-
ply with the requirements of the warranty of habitability.
The landlord's lack of fault and reasonable efforts to repair
do not prolong the duty to pay full rent.

In *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184
(1973), we found that social changes in landlord-tenant re-
lations[3] and legislative changes in landlord obligations and
tenant remedies[4] were inconsistent with medieval notions of

---

[2] The landlord and the tenant disagree as to whether the landlord ef-
fected repairs within a reasonable time after learning of the defect, and
the trial judge made no finding.  For the purposes of argument, however,
we assume that the landlord did accomplish the repairs within a reasona-
ble time.

[3] We noted that the factual assumptions underlying the common law
exception of *Ingalls* v. *Hobbs*, 156 Mass. 348 (1892), had come to describe
the rule: "Modern tenants, rightfully expect that the premises they rent
. . . will be suitable for occupation." *Boston Hous. Auth.* v. *Hemingway*,
363 Mass. 184, 197 (1973).  And we quoted the decision in *Javins* v. *First
Nat'l Realty Corp.,* 428 F.2d 1071, 1078-1079 (D.C. Cir. 1970), which
describes the differences between the old agrarian and modern urban ten-
ant's expectations concerning repairs of a dwelling.

[4] For example, the State Sanitary Code, adopted pursuant to authority
granted in G. L. c. 111, § 5 (since amended, see G. L. c. 111, § 127A, for
the current version), imposed on the landlord a duty to maintain an
apartment in habitable condition, so the landlord could fairly expect and
be expected to keep his rented premises habitable.  Moreover, the Legisla-
ture had created tenant's remedies for private enforcement of the Code,
G. L. c. 111, §§ 127A-127H, and for self-help through rent withholding,
G. L. c. 239, § 8A.  The creation of private remedies negated any argu-
ment that the Legislature was content with purely public enforcement of

the lease as a conveyance of property. The changes in social and legal circumstances changed the parties' expectations. It was in this context that we chose to recast our theory of the landlord-tenant relationship in a form congenial with the Legislature's tendency: "[A] lease is essentially a contract between the landlord and the tenant wherein the landlord promises to deliver and maintain the demised premises in habitable condition and the tenant promises to pay rent for such habitable premises. These promises constitute interdependent and mutual considerations. Thus, the tenant's obligation to pay rent is predicated on the landlord's obligation to deliver and maintain the premises in habitable condition." *Id.* at 198. We held that a tenant is entitled to a rent abatement, in whole or in part, during the period that an apartment remains uninhabitable after the landlord has notice of the defects.[5] *Id.* at 203.

The landlord argues that, on the present facts, he has done no wrong. He argues that to impose strict liability would penalize the landlord who is acting reasonably and would impose a duty impossible to meet. Moreover, he claims the expectations of the parties support the landlord's position. Both landlord and tenant expect less than perfect upkeep of apartments; systems break down; maintenance takes time; the law should reflect this reality.[6] Further-

the Code. The rent-withholding provision embodies a legislative judgment that the tenant's rental obligation is bound up with the landlord's obligation to provide habitable premises.

[5] The trial judge found that the measure of damages was "the difference between the value of the apartment as warranted and the rental value of the apartment in its defective condition." See *McKenna* v. *Begin*, 5 Mass. App. Ct. 304, 306 (1977). Apart from the question whether the tenant's rent abates only after the landlord has had a reasonable time to repair, damages are not in dispute in this case.

[6] The landlord seems further to suggest that the presence of an exculpatory clause in the tenant's lease should be evidence of the tenant's expectations. The clause stated that the landlord would provide hot water and reasonable heat, but that failure to do so would not give rise to a damage claim. As the landlord appears to concede, this clause is void. It is an attempt to limit the landlord's duties and liabilities under the Sanitary Code

more, Berman contends, the purpose of the warranty is "to provide tenants with a mechanism to encourage the repair of serious and dangerous defects" connected with a residential dwelling unit or the common areas. This purpose can be achieved without imposing strict liability on landlords.

These contentions have no place in the framework established in *Hemingway.* Considerations of fault do not belong in an analysis of warranty. Nowhere does the landlord point us to an analogous body of warranty law that incorporates a fault standard,[7] nor has Berman persuaded us to make an exception here. The landlord may be correct in characterizing itself as an innocent party, and we are cognizant of the economic burdens that a landlord typically bears.[8] Nevertheless, we note that the landlord's liability

and is therefore of no effect. *Boston Hous. Auth.* v. *Hemingway, supra* at 199. A tenant has a right to expect that the landlord will comply with the law. It is this right that we protect.

[7] Amicus Greater Boston Real Estate Board cites language in *Back* v. *Wickes Corp.*, 375 Mass. 633, 640-641 (1978). We said that "[w]arranty liability is not absolute liability . . . . [A] manufacturer must anticipate the environment in which its product will be used, and it must design against the reasonably foreseeable risks attending the product's use in that setting." This quotation, of course, states the proximate cause limitation on the warranty of a manufacturer of goods. There is no suggestion that proof of fault or bad faith is a prerequisite for recovery under such a warranty. Furthermore, in contrast to a claim for injury to person or property, considerations of proximate cause do not affect validity of a claim for rent abatement.

[8] The landlord suggests, and the amicus Greater Boston Real Estate Board argues at length, that to make the landlord the insurer of apartment maintenance will have deleterious economic effects on landlords and on the housing market generally. Increased costs derived from the warranty will result in increased rents. Older buildings, whose maintenance is hardest to ensure, tend to house low income tenants who cannot pay increased rents. Thus, imposing full warranty protection will ultimately reduce the stock of low income housing.

This argument assumes that tenants will frequently enforce the rent abatement remedy or that landlords will spend a great deal of money on preventive maintenance. Yet empirical evidence tends to show a very low rate of tenant enforcement. Abbott, Housing Policy, Housing Codes and Tenant Remedies: An Integration, 56 B.U.L. Rev. 1, 63 (1976). Hirsch, Hirsch & Margolis, Regression Analysis of the Effects of Habitability Laws Upon Rent: An Empirical Observation on the Ackerman-Komesar

without fault is merely an economic burden; the tenant living in an uninhabitable building suffers a loss of shelter, a necessity. More importantly, the warranty of habitability is not designed to penalize the landlord for misbehavior. In the rent abatement context, the doctrine imposes a duty quite apart from notions of moral sanction or deterrence.[9]

The landlord would have us avert our eyes from the clear teaching of *Hemingway*: "[T]he essential objective of the leasing transaction is to provide a dwelling suitable for habitation." *Boston Hous. Auth.* v. *Hemingway, supra* at 196-197. A dwelling afflicted with a substantial Sanitary

---

Debate, 63 Calif. L. Rev. 1098, 1130 (1975). A study has failed to find a statistically significant relationship between the presence of most habitability laws, including rent abatement, and increased rents. Hirsch, Hirsch, & Margolis, *supra* at 1130-1132. In addition, we question the virtue of relying on a theory of economic efficiency at the expense of legal analysis. Precedent, legislative policy, and common law principles support the result we reach today. See Michelman, Norms and Normativity in the Economic Theory of Law, 62 Minn. L. Rev. 1015, 1015 (1978) ("[W]ell-conducted, systematic, convincing, behaviorally focused research can entrap as well as liberate, can help engender as well as dispel false belief about social reality, insofar as it invites the reduction of reality to observed regularities of behavior").

[9] The landlord relies in part on case law relating to tort liability for injuries caused by failure to repair defective premises. We have held that, when the defect occurs in the common areas, the landlord is subject to a duty of reasonable care. *King* v. *G & M Realty Corp.*, 373 Mass. 658, 661-662 (1977). When the defect occurs in the rented premises, the question is not one of negligence, but one of breach of warranty. In the latter instance, the landlord must comply at least with minimum standards prescribed by the State building and sanitary codes. Whether the scope of the warranty is broader is an open question. *Crowell* v. *McCaffrey*, 377 Mass. 443, 451 (1979). But see *Boston Hous. Auth.* v. *Hemingway, supra* at 218 (Quirico, J., dissenting).

*Crowell* left open a second question as well. "[W]e think the jury would have been warranted in finding that the landlord, by the exercise of reasonable care, . . . could have brought the premises into compliance. We do not pass on the question whether such a finding is essential to liability." *Crowell* v. *McCaffrey, supra* at 452. Whatever standard of liability for personal injury under a theory of breach of warranty is appropriate, however, the tenant's right to abate rent in the present case arises from mutual obligations, not from an interest in freedom from harm. See W. Prosser, Torts § 92 (4th ed. 1971).

Code violation is not habitable. The essential objective of the warranty is to make sure that the tenant receives what she is paying for. The tenant may not excuse her obligation with mere reasonable efforts to pay rent. Nor may the landlord avoid his duty with mere reasonable efforts to provide a habitable dwelling. The contract between the parties, seen through the law's clarifying lens, requires such symmetry.

The landlord argues that the existence of a serious defect in an apartment is a potential breach of the warranty; the breach becomes actual only after the landlord has been notified of the defect and has had a reasonable time to repair.[10] In *Hemingway*, however, we set out a very different picture of the warranty: "[The warranty] means that at the inception of the rental there are no latent [or patent] defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable." *Boston Hous. Auth.* v. *Hemingway, supra* at 199, quoting from *Kline* v. *Burns,* 111 N.H. 87, 92 (1971). Neither at the inception nor during the term of the lease did we leave room for a reasonable time to repair.[11] Admittedly

---

[10] In support of this proposition, the landlord points out that three States require that a landlord have a reasonable time to repair. *Hinson* v. *Delis,* 26 Cal. App. 3d 62, 70 (1972). *King* v. *Moorehead,* 495 S.W.2d 65 (Mo. App. 1973). *Berzito* v. *Gambino,* 63 N.J. 460, 469 (1973). We note that these cases did not squarely present the issue and that the courts stated the proposition without explanation.

[11] See *King* v. *G & M Realty Corp.,* 373 Mass. 658, 661 n.6. See also Love, Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability?, 1975 Wis. L. Rev. 19, 105 ("[T]he notice [and reasonable time to repair] requirement reflects the continuing vitality of the notion that a lease is a conveyance of property").

Amicus Real Estate Board presses an analogy based on G. L. c. 106, § 2-508 (2) of the Uniform Commercial Code, as appearing in St. 1957, c. 765, § 1: "Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender." The argument that the landlord has a comparable right to cure fails on

a tenant must notify her landlord of defects as a prerequisite to a rent abatement,[12] but the purpose of this requirement is not to assure the landlord a reasonable time to repair. The requirement is designed to minimize the time the landlord is in breach and hence mitigate the permissible period of abatement of rent. The rent abatement begins when notice is given, not at a reasonable time after notice. Time for repairs has no place in the calculus.[13]

Our position follows as a corollary of *Hemingway*. However, *Hemingway* is not the only source of guidance for rejecting the landlord's theory. When the tenant's loss of heat

---

two grounds. First, the seller may cure only if the buyer rejects or, arguably, revokes acceptance of the goods. Here the tenant did neither. By not vacating her apartment, she accepted the goods, then sought damages under the warranty. In that circumstance, § 2-508 (2) does not afford a right to cure. See, e.g., *Bonebrake* v. *Cox*, 499 F.2d 951, 957 (8th Cir. 1974).

Second, the amicus relies on the statement of official Comment 2 that "reasonable grounds can lie in prior course of dealing, course of performance or usage of trade . . . ." Here the landlord appears to have proceeded in a responsible manner consistent with landlords' trade usage. However, the State Sanitary Code, not such usage, provides the proper yardstick for measuring the landlord's conduct. The *Hemingway* court removed the landlord's duties under the Code from the realm of private ordering. *Boston Hous. Auth.* v. *Hemingway, supra* at 199. Those duties cannot be waived, bargained away, or qualified by customary practice. The Code puts the landlord on notice that it must supply adequate heat and hot water. State Sanitary Code, Art. II, Regulations 5, 6 (1969) (current version at 105 Code Mass. Regs. 410.190, 410.200, 410.201). The landlord can have no reasonable grounds to believe that noncompliance will be acceptable.

[12] The landlord's knowledge of the defect is also sufficient. *McKenna* v. *Begin*, 3 Mass. App. Ct. 168, 172-173 (1975). *Crowell* v. *McCaffrey*, 377 Mass. 443, 452 (1979), left open the question whether a landlord without notice or actual knowledge of a Code violation can be liable if "by the exercise of reasonable care, [he] could have discovered whatever violations of the codes . . . existed."

[13] "[T]he possibility that the residence could be made habitable within a reasonable time," is a factor in determining the materiality of a breach of warranty. *Boston Hous. Auth.* v. *Hemingway, supra* at 201. However, there is no mechanical relationship between this possibility and a characterization of the breach as "potential" or "actual." Here the trial judge's ruling that the landlord's breach was material was not in error.

occurred, G. L. c. 239, § 8A, permitted the tenant to withhold rent for Code violations only if "the owner . . . had not taken reasonable steps to remedy such conditions." St. 1973, c. 471. In 1977, the Legislature struck this provision. St. 1977, c. 963. The tenant may now withhold rent without considering whether the landlord is at fault or is taking reasonable steps to repair. As was the case in *Hemingway*, this statute provides for rent withholding, not rent abatement; but, as in *Hemingway*, we choose to permit a rent abatement as a matter of common law.[14] We consider

---

[14] Amicus Greater Boston Real Estate Board points to language in the State Sanitary Code to show that the Code contemplates a reasonable time to repair as a prerequisite for punishment of a violation. An enforcement agency's order "shall indicate the time limit for compliance" and "may suggest action which, if taken, will effect compliance with this Chapter." State Sanitary Code, Art. II, Regulation 33.4 (c) and (e), adopted in 67 Mass. Reg. 40 (1977) (currently codified in 105 Code Mass. Regs. 410.832 [B] [3] & [5]). Failure to comply with such an order is a prerequisite for a fine. *Id.* at 410.910.

First, we note that the language quoted appears in a version of the State Sanitary Code not in effect at the time of events in this case. See 67 Mass. Reg. 21 (effective Aug. 1, 1977). The version in effect in 1976 required the enforcing agency to "allot a reasonable time for any action [the order] requires." State Sanitary Code, Art. II, Regulation 33.4 (b) (1969). The 1977 amendment changed the "reasonable time" requirement to a specific time limit. State Sanitary Code, 105 Code Mass. Regs. 410.830. For a failure to provide heat, the Code now requires that the board of health, within twelve hours of the inspection, shall order the landlord to make a good faith effort to correct the violation within twenty-four hours. *Id.* at 410.830 (A) (2). We believe that this change indicates dissatisfaction with the vagueness of the term "reasonable time."

Second, even though the Code has consistently provided some grace period during which the landlord may attempt to comply, there is a distinction between the Code's criminal penalty and the rent abatement at issue here. The landlord "violates" the Code by failing to comply. State Sanitary Code, Art. II, Regulation 1 (1969) (currently codified in 105 Code Mass. Regs. 410.044). Only the penalty is delayed during the grace period. And under the new version of the Code, every enforcement order must be accompanied by notice to the landlord that "the conditions which exist may permit the occupant . . . to exercise one or more statutory remedies." State Sanitary Code, 105 Code Mass. Regs. 410.832 (B) (6). We read the Code to imply that civil remedies for violations are available during the landlord's time to repair. This result is consistent with the 1977 amendment to G. L. c. 239, § 8A.

the result we reach here to be consistent not only with *Hemingway*, but also with the law dealing with breach of warranty and with express legislative policy.

*Judgment affirmed.*