McHugh, J.
I. BACKGROUND
Plaintiff, Sycamore Land Corporation (“Sycamore”), seeks judicial review of a decision and order by defendant, Cambridge Rent Control Board (“the Board”), that defendant Michael Thompson (“the tenant”) is entitled to a 15% rent abatement for the period March 6, 1991 to January 10,1992 because lead was present in his apartment during that period in violation of G.L.c. Ill, §197 and the State Sanitary Code. Defendants have cross-moved for entry of a judgment affirming the Board’s decision.
II. FACTS
Based on the facts, essentially undisputed, drawn from the record, it appears that Sycamore purchased a residential apartment building at 1558 Massachusetts Avenue in Cambridge (the “premises”) on March 6, 1991. The tenant, his wife and their two children, one 3 years old and the other 16 months old, lived on the premises in Apt. 42 on March 6 and had lived there continuously since September of 1990.
In October of 1991, Sycamore hired a licensed lead paint inspector employed by Star Environmental Services, Inc. (“Star”) to conduct an inspection of Apt. 42 and other apartments on the premises. Star’s inspection revealed the presence of lead paint in Apt. 42. A deleading process, undertaken by qualified contractors Sycamore hired and paid, thereafter ensued. It is unclear when the deleading process began but the process clearly was completed in January of 1992. Indeed, Star issued the tenant a reoccupancy certificate on January 10, 1992.
The tenant paid $630 in monthly rent to Sycamore. Upon learning of the lead problem, the tenant withheld one-half the rent for December, 1991 and all of the rent for January and February of 1992 for a total of $1,575. As a result, on February 18, 1992, Sycamore filed with the Board an application for a certificate of eviction claiming that the tenant had failed to pay rent to which Sycamore was entitled. In response, the tenant claimed that he was entitled to an abatement of rent because of the presence of lead paint.
In February of 1992, a Board Hearing Examiner held a hearing to determine whether a certificate of eviction should issue for nonpayment of rent. The Hearing Examiner found that Sycamore had made reasonable efforts to correct the lead-paint condition. Nevertheless, the Hearing Officer concluded that the tenant was entitled to a 50 percent reduction in rent, in accordance with Board Regulation 61-03 and 61-04(4), for the period beginning March 6, 1991, when Sycamore acquired the property, until January 10, 1992, when Star issued the certificate of reoccupancy. *490 Because the rent abatement due to the tenant exceeded the amount allegedly due to Sycamore, the Hearing Officer recommended to the Board that the certificate of eviction be denied.
Ultimately, on January 25, 1993, the Board issued an order affirming the Hearing Examiner’s findings but reducing the amount of the rent abatement to 15 percent. That left a balance due from the tenant to Sycamore and the Board ordered the tenant to pay that balance within seven days to avoid eviction. Sycamore then appealed the Board’s decision to this Court.
Board Regulation 61-04(4) was amended on February 18, 1992, the day Sycamore filed an application for a certificate of eviction. Before the amendment, that section provided, in pertinent part, as follows:
The fair value of a controlled rental unit. . . shall be determined in accordance with the following schedule by reducing the maximum rent level by the percentage indicated . . .
4. Lead paint which creates a violation of M.G.L. Chapter 111, Sections 190-199 (Lead Poisoning Prevention and Control Act) as determined by the Cambridge Lead Poisoning Prevention Program .. . 50 percent.
The February 18, 1992 amendment made the scheme a great deal more flexible. As amended, the regulation read as follows:
The fair value of a controlled rental unit. . . shall be determined in accordance with the following schedule by reducing the contract rental level by a percentage within the range indicated, except that the Board may deviate from the range indicated as long as the reasons for doing so are specified in the hearing report or the Notice of Ruling . . .
4. The existence of lead paint in violation of M.G.L. Chapter 111, Sections 190-199 (Lead Poisoning Prevention and Control Act) ... 15 percent to 75 percent.
The effect of the February 18, 1992 amendment, in pertinent part, therefore, was to change the mandatory 50 percent reduction figure to a flexible range and to eliminate the requirement that the violation of G.L.c. Ill, §§190-199 be determined by the Cambridge Lead Poisoning Prevention Program.
III. DISCUSSION A. STANDARD OF REVIEW
Judicial review of adjudicatory decisions of the Cambridge Rent Control Board is conducted in accordance with G.L.c. 30A, §14. St. 1976, c. 36 as amended by St. 1985, c. 399, §3. Under G.L.c. 30A, §14, the court is required to determine whether there is substantial evidence to support the Board’s decision, whether the decision is correct as a matter of law and whether the Board properly exercised its discretionary power. G.L.c. 30A, §14; Moulton v. Brookline Rent Control Board, 385 Mass. 228, 233 (1982); Amari v. Rent Control Board of Cambridge, 21 Mass.App.Ct. 598, 602 (1986). The party seeking to overturn the agency’s decision has the burden of demonstrating that that decision is invalid. Faith Assembly of God v. Massachusetts Building Code Commission, 11 Mass.App.Ct. 333, 334 (1981).[1]
Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. G.L.c. 30A, §1(6). In reviewing the Board’s proceedings to determine whether they are supported by substantial evidence, the Court must consider the Board’s expertise, technical competence and specialized knowledge, H.N. Gorin & Leeder Management Co. v. Rent Control Board of Cambridge, 18 Mass.App.Ct. 272, 275 (1984), and must accord the agency deference in interpreting and administering its enabling legislation. Valentine v. Rent Control Board of Cambridge, 29 Mass.App.Ct. 60, 69-70 (1990). Deference, however, is not abdication, Board of Education v. School Committee of Quincy, 415 Mass. 240, 244 (1993), and the Court may not accept an agency interpretation either of statute or regulation that is plainly wrong. See Town of Brookline v. DEQE, 398 Mass. 404, 414 (1986).
B. THE MERITS
Sycamore’s position has essentially four parts. First, Sycamore maintains that the Cambridge Rent Control Board does not have authority to order abatement of rent for a violation of the State Sanitary Code because the authority to order rent abate-ments lies exclusively in the courts. In support of that proposition, Sycamore cites G.L.c. Ill, §127H, a statute that was in effect at all material times but was repealed by St. 1992, c. 407, §9 approved January 14, 1993 and effective ninety days thereafter.
Second, Sycamore maintains that G.L.c. Ill, §197, the lead-paint statute, is violated when a residential property owner with actual knowledge of the existence of lead paint in premises occupied by children under the age of 6 fails to remove the lead paint. From that, it follows, in Sycamore’s view, that the mere existence of lead paint in a residential premises occupied by children under the age of 6, without the landlord’s knowledge, is not a violation of the statute. Sycamore therefore claims that it did not violate G.L.c. Ill, §197 because it took steps to remove the lead paint promptly upon becoming aware of its existence.
Third, Sycamore asserts that the amended version of Regulation 61-04(4) cannot be retroactively applied to its relationship with the tenant. Because, in Sycamore’s view, the trigger to application of the old regulation — a finding by the “Cambridge Lead Poisoning Prevention Program” — did not exist, the Board was powerless to order any abatement at all.
Finally, Sycamore contends that the Board had no power to order an abatement of rent all the way back *491 to the beginning of its ownership of the building when no one had actual knowledge that lead was present.
1.Board Authority with Respect to Sanitary Code
A violation of the Lead Paint Law is a violation of the State Sanitary Code. G.L.c. Ill, §198 (1990). The proposition that the Board has authority to make determinations concerning violations of the State Sanitary Code and to enter abatement orders based on those violations was established by the reasoning of this Court in Lambergs v. Rent Control Board (Middlesex Superior Court, Civil Action No. 82-4533 (May 17, 1983) Paper No. 15), aff'd, 17 Mass.App.Ct. 1111 (1984). There the Court, per Diamond, J., held that
The . . . provisions of the Enabling Act, when read together with judicial decisions in the field of landlord-tenant law, are sufficient to authorize the Board in a proceeding for the issuance of a certificate of eviction, to determine the amount of an abatement due to violations of the State Sanitary Code. If such violations are so substantial as to constitute breaches of the warranty of habitability, then the rent abatement begins when notice of the violation is given to the landlord.
The Enabling Act gives the City of Cambridge and its Board broad authority to control rents and evictions . . . This authority should fairly be regarded as giving the Board the power to link the issuance of a certificate of eviction to an appropriate rent abatement where the premises are not habitable because of Sanitary Code violations.
See also Boston Housing Authority v. Hemingway, 363 Mass. 184, 192 (1973).
Sycamore’s argument that the decision in Lambergs is inconsistent with G.L.c. Ill, §127H, which provides that a tenant may sue a landlord in Superior Court to obtain a remedy for Sanitary Code violations, is unpersuasive. That statute never has been viewed as providing an exclusive remedy. See generally Boston Housing Auth. v. Hemingway, 363 Mass. 184, 192-93 (1972). Moreover, the statute was adopted in 1966 and thus was in existence at the time of Judge Diamond’s careful and well-reasoned decision in Lambergs. Sycamore’s argument thus has been resolved adversely to it.
2.Applicability of the Statute
Defendant’s second argument fares no better. G.L.c. Ill, § 197(a) provides in pertinent part as follows:
Whenever a child under six years of age resides in any residential premises in which any paint, plaster, soil or other accessible material contains dangerous levels of lead, the owner shall remove or cover said paint, plaster, soil or other materials as required by this section so as to make it inaccessible to children under six years of age.
Sycamore reads that section as one that does not prohibit the presence of lead paint in a building but simply requires its removal under certain conditions. That portion of Sycamore’s interpretation of the statute is correct. Commonwealth v. Racine, 372 Mass. 631, 637 (1977). Sycamore continues, however, by asserting that the condition triggering a landlord’s removal obligation is the presence of children under 6 and thus that a violation of the statute cannot possibly arise until the landlord knows of the presence of the lead paint or of the children or both. Because Sycamore claims, and the Board found, that Sycamore did not know of the presence of lead paint before Star completed its examination, and because Sycamore claims to have made prompt efforts to remove the lead paint once notified of its existence, Sycamore claims that it did not violate the statute at all.
That simply is not the law. As the Supreme Judicial Court said in Bencosme v. Kokoras, 400 Mass. 40, 43 (1987),
Section 197 imposes a duty to remove or cover lead paint, plaster, and other material when a child under six years of age resides on the premises . . . Neither section [197 and 199] imposes that duty only if the owner knew or should have known of the risk or only if the premises had been inspected and a compliance order had been issued.
The violation of §197 thus occurred when children under 6 years of age moved into the premises whether or not Sycamore knew that lead paint was then present. That violation was in existence and ongoing when Sycamore bought the premises on March 6, 1991 because children under 6 were living there then.
3.Retroactivity of Regulation
Sycamore next argues that the amended provisions of the Board’s regulation cannot be retroactively applied. Under the old regulation, the applicability of which Sycamore concedes, the Board in Sycamore’s view could not issue a rent abatement order unless the “Cambridge Lead Paint Prevention Program” made a finding that lead was present. No such finding was made by that organization in this case[2] and Sycamore argues that the Board thus had no power to issue the order.
There are two flaws in Sycamore’s argument, either one of which is sufficient to defeat it. In the first place, it is undisputed on the present record that lead was present at all times after Sycamore acquired ownership of the property. The inspectors Sycamore hired reported that lead was present. Sycamore acted on their report and spent considerable sums removing the lead. Even if the old regulation applied, it would exalt form over substance to say that no rent abatement was permissible in the absence of a finding by the Cambridge Lead Paint Prevention Program when *492 the presence of lead is undisputed by every party involved in the proceeding.[3]
Second, insofar as the amended regulation deleted the requirement for a finding by the Cambridge Lead Paint Prevention Program, the amendment was procedural in nature and affected no substantive rights. Procedural amendments typically have retroactive application and apply at least to all cases pending at the time the amended regulation becomes law. City Council of Waltham v. Vinciullo, 364 Mass. 624, 628-29 (1974).
4. Propriety of Retroactive Rent Abatement
Sycamore’s final contention is somewhat more difficult. That contention, implicitly made, is that the Board had no authority to abate rent all the way back to March of 1991 when it is undisputed that no one knew that lead paint was present on the premises and where the record is barren of any suggestion that the presence of lead paint had any deleterious impact on anybody. While Sycamore’s argument has some appeal, I am persuaded that the Board’s position is nonetheless correct.
In Boston Housing Authority v. Hemingway, 363 Mass. 184 (1973), the Supreme Judicial Court held that the warranty of habitability that was part of every lease of residential property meant
that at the inception of the rental there [were] no latent [or patent] defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable.
Id. at 199.
While the common-law right to abate rent begins with notice to the landlord, Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 203-04 (1979), a breach of warranty occurs when the defect occurs. Id. at 202. And “[a] dwelling afflicted with a substantial Sanitary Code violation is not habitable.” Id. at 201-02. Therefore, there is no reason why, by statute or regulation, the abatement period cannot be made to commence at the time the breach of warranty occurs.
Legislative or regulatory provisions abating rent as of the date the breach occurs maximize a landlord’s incentive to inspect her property, uncover potential breaches and take prompt corrective action. Indeed, limiting legislative or regulatory power to abate rents to the period someone could prove that the landlord had notice of a breach of warranty would encourage the kind of purposeful disregard of substandard conditions that is fundamentally at war with the purposes for the warranty itself.
On its face, the regulation gave the Board the power to order abatement of rents during the entire period that the violation existed. For the reasons set out above, the Board’s application of that regulation so as to order an abatement during a period before either the landlord or the tenant knew of the violation is not arbitrary, capricious or otherwise impermissible.
ORDER
In light of the foregoing, it is hereby ORDERED that Sycamore’s motion for summary judgment should be, and it hereby is DENIED. Judgment will enter affirming the Board’s Order.

 Sycamore has moved for summary judgment while the Board has moved simply for an order affirming its decision. I treat Sycamore’s motion as, in effect, a motion to vacate the Board’s order for summary judgment procedures and concepts have little, if any, direct applicability to judicial review of administrative decisions. See generally Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Commission, 372 Mass. 152, 153 n.2 (1977).

 In fact, as Sycamore undoubtedly is aware, the Cambridge Lead Paint Prevention Program did not exist for several years before the regulation was changed. See Record at 8-9.

 Application of the amended regulation, of course, worked in Sycamore’s favor because the Board entered an order abating 15% of the rent instead of 50% as it would have been required to do under the old regulation.