Lauriat, Peter M., J.
The Plaintiff, Jose Huezo (“Huezo”), seeks judicial review of the final decision of the Defendant, the Chelsea Housing Authority (“the CHA”), which disqualified Huezo for state and federal housing benefits based on his history of non-payment of rent. Huezo claims that the CHA’s decision was erroneous and must be reversed because in both instances where he refused to pay rent, he had a statutory right to withhold rent under G.L.c. 239, §8A. After reviewing the record of the administrative proceedings and the memoranda of counsel, the Plaintiffs Motion for Judgment on the Pleadings is ALLOWED and the Defendant’s Cross Motion for Judgment on the Pleadings is DENIED.
BACKGROUND
Huezo rented Apartment 3 at 55 Heard Street in Chelsea from March 2005 until August 2006. Huezo timely paid the rent until June of 2006 when he failed to pay his rent in the amount of $900. In July of2006, Huezo again failed to pay his rent. On July 10, 2006, Huezo’s landlord, Handseo Singh (“Singh”), served Huezo with a summary process summons and complaint for non-payment of rent.
On August 9, 2006, the Board of Health of the City of Chelsea (“Board of Health”) inspected Huezo’s apartment and found several Sanitary Code violations including mice and roach infestation, a hole in the living room wall, unsanitary hallways, and broken glass in front of the security door. The inspection report concluded that “ONE OR MORE OF THE DEFECTS MAY ENDANGER OR MATERIALLY IMPAIR THE HEALTH, SAFETY, AND WELL BEING OF THE OCCUPANTS OR THE PUBLIC.” The Board of Health provided Singh *23 either seven or fourteen days, depending on the violation, to comply with the Sanitary Code.
Singh and Huezo agreed to settle the summary process action and executed an agreement for judgment on August 17, 2006. The settlement provided that Huezo would waive any claims for violations of the Sanitary Code while Singh would waive any claims for non-payment of rent. Singh also agreed to provide Huezo with a favorable reference to prospective landlords.
Huezo applied for state and federal housing benefits in October of 2006. On April 13, 2007, Linda Ferullo (“Ferullo”), a CHA occupancy specialist, denied Huezo’s application based on a history of non-payment of rent pursuant to 760 Code Mass. Regs. §5.08(l)(e). This decision was based on Huezo’s withholding of rent in June and July of 2006. Huezo appealed this decision and was granted an informal hearing held before Albert R. Ewing (“Hearing Officer”) on June 28, 2007. At the hearing, Huezo testified, through his translator,[1] that he had discussions with his landlord about the defects in his apartment prior to withholding rent. Huezo could not recall the exact dates of these discussions.
The Hearing Officer affirmed the denial of benefits and concluded that Huezo:
ha[s] not presented sufficient information to overturn [Ferullo’s denial of benefits]. This decision is based on the following:
1. A Judgment for Plaintiff of Possession and Rent against Mr. Huezo was executed on 8/24/200[6][2] for failure to pay rent for June and July 200(6].
2. Mr. Huezo argued that he had a right to withhold rent, which he did once he notified the landlord of any sanitary code violations, however he did not prove when he notified the landlord. The right to withhold rent does not mean the right to live in the apartment rent-free. Mr. Huezo did not show that he notified the landlord in writing of his intent to withhold the rent and the reason why. Further, Mr. Huezo did not put the rent in escrow to show intent or ability to pay the rent, nor did he exercise his rights to repair and deduct.
3. The rent was not paid 6/l/200[6] and according to the Notice of Entry on the Judgment the date of breach, demand or complaint was 7/17/2006. The Chelsea Board of Health did not inspect the property until 8/9/200(6].
4. The landlord was given 7 to 14 days to correct the existing violations, indicating that at the time none of the violations were considered conditions that may “materially endanger” the health of the occupants.
5. Therefore, it is my conclusion that Mr. Huezo has a history of non payment of rent and would cause a monetary loss to the Chelsea Housing Authority.
This decision was issued on August 22, 2007, and constituted a final decision by CHA. Huezo timely appealed the CHA’s decision to this Court on September 21, 2007.
DISCUSSION
Pursuant to G.L.c. 30A, §14(7), this Court may reverse, remand, or modify an agency decision if that decision is based on an error of law or on unlawful procedure, is arbitrary and capricious, or if there is a lack of substantial evidence to support the decision. See also Madera v. Secretary of the Executive Office of Communities and Dev., 418 Mass. 452, 463 (1994) (a local housing authority must comply with the procedures under G.L.c. 30A in disqualifying applicants for housing benefits). The Court must limit its review to the administrative record and “give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, § 14.
The party appealing an administrative decision bears the burden of demonstrating its invalidity. Merisme v. Bd. of App. of Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). The agency is the sole judge of credibility and weight of the evidence at an administrative proceeding. Greater Media, Inc. v. Dep’t of Pub. Utilities, 415 Mass. 409, 417 (1993). When reviewing a decision under G.L.c. 30A, §14, the Court must examine the cumulative weight of the evidence and its inquiry does not end simply because “a rational mind may draw an inference in support of the agency’s decision.” Cobble v. Comm’r of Dep’. of Soc. Servs., 430 Mass. 385, 390 (1999).
Huezo’s position boils down to two principal arguments. First, he disputes the Hearing Officer’s conclusion that he failed to comply with G.L.c. 239, §8A, when he withheld rent in 2006. Huezo claims that this conclusion was not supported by substantial evidence and was arbitrary and capricious. Second, Huezo argues that the Hearing Officer’s decision was based on an error of law and was arbitrary and capricious because it failed to take into account any mitigating circumstances.
I.
In his first argument, Huezo claims that the CHA wrongly disqualified him for having “a history of nonpayment of rent” because he had a statutory right to withhold rent under G.L.c. 239, §8A, based on the various Sanitary Code violations. Under G.L.c. 239, §8A, a tenant may withhold rent if the poor conditions of his or her apartment amount to a breach in the implied warranty of habitability. A presumption that a tenant is entitled to withhold rent arises if there is “(p]roof that the premises are in violation of the standard of fitness for human habitation established under the state sanitary code, the state building code, *24 or any other ordinance, by-law, rule or regulation establishing such standards and that such conditions may endanger or materially impair the health, safety or well-being of a person occupying the premises.” G.L.c. 239, §8A; see also Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 201-02 (1979) (“A dwelling afflicted with a substantial Sanitary Code violation is not habitable”).
To withhold rent under G.L.c. 239, §8A, a tenant must demonstrate that the landlord or the landlord’s agent had knowledge of the defective condition prior to withholding rent. See G.L.c. 239, §8A; Jablonski v. Casey, 64 Mass.App.Ct. 744, 749 (2003) (tenant required to provide landlord with notice of defective conditions before withholding rent).
The CHA has countered Huezo’s first argument largely by emphasizing the undisputed fact Huezo did not pay rent for June and July 2006. The CHA, however, does not appear to contest the proposition that it would be fundamentally unfair to refuse an applicant public housing benefits based on that applicant’s proper assertion of his rights to withhold rent under G.L.c. 239A, §8A. Instead, the CHA argues that Huezo did not have a statutory right to withhold rent because he failed to adequately notify the landlord prior to withholding rent, and therefore he unjustifiably withheld rent.
Because it is undisputed that Huezo’s apartment did not comply with the Sanitary Code, whether Huezo properly withheld rent under G.L.c. 239, §8A turns on whether Huezo notified Singh prior to withholding rent as required by §8A. See G.L. 239, §8A; Berman & Sons, 379 Mass. at 202-03.
In Berman & Sons, the Supreme Judicial Court discussed the purpose of requiring notice prior to withholding rent:
Admittedly, a tenant must notify her landlord of defects as a prerequisite to a rent abatement, but the purpose of this requirement is not to assure the landlord a reasonable time to repair. The requirement is designed to minimize the time the landlord is in breach and hence mitigate the permissible period of abatement of rent.
379 Mass. at 202-03.
In the informal hearing, Huezo testified that he had discussions with Singh regarding the defects in the apartment prior to withholding rent in June 2006 but that he could not remember the exact dates of the discussions. The CHA argues that the landlord did not receive notice of defective conditions of the apartment until he was cited for violations of the Sanitary Code in August 2006. In support of this argument, the CHA points to the Hearing Officer’s decision which states that “Huezo did not prove when he notified the landlord.” In further support, the CHA cites to the testimony of its employee, Ferullo, who testified that Singh told her that he “asked [Huezo] what the reason was he wasn’t paying the rent in June, and he said he didn’t have the money.” Thus, the CHA contends, the Court should infer that the Hearing Officer did not find Huezo credible when he testified that he notified Singh prior to withholding rent. And, as weighing evidence and determining witnesses’ credibility are the exclusive province of the Hearing Officer,[3] the Court should conclude that Huezo did not have a statutory right to withhold rent as a matter of law. There are several difficulties with this analysis.
First, the Hearing Officer appeared to acknowledge that Huezo had a statutory right to withhold rent, and it is unclear why the Hearing Officer concluded that Huezo did not meet the requirements of G.L.c. 239, §8A. Paragraph two of the Hearing Officer’s decision states:
Mr. Huezo argued that he had a right to withhold rent, which he did once he notified the landlord of any sanitary code violations, however he did not prove when he notified the landlord. The right to withhold rent does not mean the right to live in the apartment rent-free. Mr. Huezo did not show that he notified the landlord in writing of his intent to withhold the rent and the reason why. Further, Mr. Huezo did not put the rent in escrow to show intent or ability to pay the rent, nor did he exercise his rights to repair and deduct.
In the first part of this paragraph, the Hearing Officer actually acknowledges that Huezo would have a right to withhold rent if he properly notified the landlord prior to doing so. The Hearing Officer then faults Huezo for failing to prove exactly when he notified the landlord. Later in the paragraph, the Hearing Officer unilaterally adds criteria to the notice requirement under G.L.c. 239, §8A. He notes that Huezo did not notify Singh in writing or place his rent funds in escrow. Neither of these requirements appears in the statute. See G.L.c. 239, §8A. Finally, the Hearing Officer appears to fault Huezo for failing to “exercise his rights to repair and deduct,” which, again, is not required under G.L.c. 239A, §8A. Accordingly, it is unclear whether the Hearing Officer concluded that Huezo did not comply with the requirements of G.L.c. 239, §8A because: (1) he discounted Huezo’s testimony and, in his fact-finding capacity, concluded that Huezo failed to provide his landlord notice; or (2) Huezo did not meet the supplemental criteria set forth by the Hearing Officer.
Second, the Hearing Officer never made any credibility determinations with respect to Huezo, nor did he state whether he assigned any weight to Huezo’s testimony. The Hearing Officer never explicitly discredited Huezo’s testimony that he had notified his landlord prior to withholding rent. This is particularly significant in light of the fact that there is no evidence in the record contrary to Huezo’s testimony. The CHA points to Singh’s comment that Huezo had advised Singh that he did not pay the rent because he did not *25 have the funds to do so. Thus, the CHA contends, the Hearing Officer likely credited this testimony and concluded that Huezo did not pay his rent because he lacked the funds rather than because of the Sanitary Code violations. Singh, however, never testified at the informal hearing. The statement was reported by the CHA’s employee, Ferullo. Thus, Ferullo referred to what Singh told her about what Huezo had told Singh. Although agency hearings need not observe formal rules of evidence, this instance of double hearsay does not contain any indicia of reliability that would warrant the Hearing Officer’s reliance upon it. See Edward E. v. Dep’t of Soc. Servs., 42 Mass.App.Ct. 478, 484 (1997) (“The reliability of the multi-level hearsay statements at a fair hearing is not established by the mere fact that they are made admissible as evidence by statute and regulation”). Cf. Northeast Metro. Reg’l Vocational Sch. Dist. Sch Comm. v. Massachusetts Comm’n Against Discrimination, 31 Mass.App.Ct. 84, 88 (1991) (a hearing officer may rely on evidence that may be inadmissible under the rules of evidence if it bears indicia of reliability). Further, Huezo testified that he did have the ability to pay the rent in June and July 2006 because his son would have paid the rent with the funds given to him by Huezo.
Finally, contrary to the CHA’s contention, the Hearing Officer never made a finding that Singh first received notice of the apartment’s defects when the apartment was cited for Sanitary Code violations in August 2006. In the absence of any explicit findings as to when Singh received notice, and given the apparent lack of any credibility determinations, the Hearing Officer’s conclusion that “[Huezo] . . . has a history of non-payment of rent and such non-payment, if repeated by a tenant in public housing, would cause monetary loss” was not supported by substantial evidence. This conclusion is bolstered by the fact that the only evidence regarding whether Huezo complied with the statute favored Huezo. See Cobble, 430 Mass. at 390 (‘To determine whether an agency’s decision is supported by substantial evidence, we examine the entirety of the administrative record and take into account whatever in the record fairly detracts from the supporting evidence’s weight”).
Moreover, the other justifications cited by the Hearing Officer lend no support to his conclusion that Huezo has a history of non-payment of rent that may cause monetary loss to the CHA. In his first reason for his decision, the Hearing Officer noted that: “A Judgment for Plaintiff for Possession and Rent against Mr. Huezo was executed on 8/24/200[6] for failure to pay rent for June and July 200[6].” Notwithstanding the general rule that evidence of settlements and settlement negotiations are inadmissible,[4] the judgment here does not support the Hearing Officer’s conclusion. The settlement is favorable to Huezo because he was absolved of any duty to pay rent for June and July of 2006. Thus, the Hearing Officer could not reasonably conclude that Huezo unjustifiably withheld rent based on a judgment which explicitly released him of any obligation to do so. See Cobble, 430 Mass. at 390 (the reviewing court should defer to the agency regarding reasonable inferences drawn from the record).
The Hearing Officer’s third reason is that “the rent was not paid 6/1/200(6] and according to the Notice of Entry of Judgment the date of breach, demand or complaint was 7/17/2006.” For the same reasons discussed above, this fact also provides little support to the Hearing Officer’s conclusions.
The Hearing Officer’s fourth and final[5] reason for his conclusion is erroneous because it is in direct conflict with the record. The Hearing Officer stated that “[T]he landlord was given 7 to 14 days to correct the existing violations, indicating that at the time none of the violations were considered conditions that may ‘materially endanger’ the health of the occupants.” With this statement, it appears that the Hearing Officer is questioning the severity of the Sanitary Code violations and is inferring that these violations were insufficient to trigger rights under G.L.c. 239, §8A. This conclusion is directly contradicted by the actual inspection report, which states: “ONE OR MORE OF THESE VIOLATIONS MAY ENDANGER OR MATERIALLY IMPAIR THE HEALTH, SAFETY, AND WELL BEING OF THE OCCUPANTS ORTHE PUBLIC.” These violations were sufficient, as a matter of law, to raise a presumption that Huezo had a statutory right to withhold his rent. See G.L.c. 239, §8A. Thus, insofar as the Hearing Officer inferred that the Sanitary Code violations were insufficient to warrant withholding rent, his conclusion was not supported by substantial evidence.
Accordingly, the Hearing Officer’s decision must fail judicial scrutiny because “the evidence points to no felt or appreciable probability”[6] of the Hearing Officer’s conclusion that Huezo had a “history of non-payment of rent.” Thus, the Court concludes that there was not substantial evidence to support either: (1) the CHA’s contention that Huezo lacked the funds to pay the rent in June and July 2006 or (2) the CHA’s claim that Huezo did not comply with the notice requirements of G.L.c. 239, §8A. For these reasons, the Hearing Officer’s conclusion that “Mr. Huezo has a history of non-payment of rent [that] would cause a monetary loss to [the CHA]” was not supported by substantial evidence.
II.
Huezo also contends that, even if he did not comply with the requirements of G.L.c. 239, §8A, when withholding his rent in 2006, the CHA’s final decision must be reversed because the Hearing Officer committed an error of law when he failed to consider mitigating circumstances in his disqualification of Huezo. The CHA addresses this argument by noting that “an agency need not make findings on every controverted issue of fact or law so long as findings indicate the *26 ‘over-all basis’ of the decision and permit effective appellate review.” CHA Memorandum at 14, citing Aetna Cas. & Surety Co. v. Comm’r of Ins., 408 Mass. 363, 374 (1990). This broad, sweeping proposition does not relieve the Hearing Officer of his explicit duty to consider mitigating circumstances as required by 760 Code Mass. Regs. §5.08(2). This regulation provides:
Prior to disqualifying an applicant under 760 CMR 5.08(l)(a) through (j), the LHA shall permit the applicant to show mitigating circumstances, which may include rehabilitation or rehabilitating efforts, sufficient so that when the potentially disqualifying behavior is weighed against the mitigating circumstances, the LHA is reasonably certain that the applicant or household member will not engage in any similar conduct in the future. In making this determination, the LHA shall consider all relevant circumstances including; (a) the severity of the potentially disqualifying conduct; (b) the amount of time which has elapsed since the occurrence of such conduct; (c) the degree of danger, if any, to the health, safety and security of others or to the security of the property of others or to the physical conditions of the housing development and its common areas if the conduct recurred; (d) the disruption and inconvenience which recurrence would cause the LHA; and (e) the likelihood that the applicant’s behavior in the future will be substantially improved. The greater the degree of danger, if any, to the health, safely and security of others or to the security of property of others or to the physical condition of the housing, the greater must be the strength of the showing that a recurrence of behavior, which would have been disqualifying, will not occur in the future. Although an applicant or household member may have a history of non-payment of rent and not fit within the exception in 760 CMR 5.08(2)(e), mitigating circumstances shall be considered in determining qualification.
Id. (emphasis supplied).
In Carter v. Lynn Hous. Auth., 450 Mass. 626, 634-36 (2008), the Supreme Judicial Court emphasized the importance of considering mitigating circumr stances when making decisions regarding public housing benefits. In that case, the plaintiffs public housing benefits were terminated based on a small claims court judgment against her arising from property damage in her former apartment. Id. at 629. In her informal hearing, the plaintiff presented evidence that the damage was not likely caused by her or her family members. Id. at 630. The plaintiff also presented evidence of mitigating circumstances, including her disability, the mild nature of her misconduct, and her “economic fragility.” Id. at 635. The Supreme Judicial Court rejected the Lynn Housing Authority’s argument that the hearing officer need not consider or explicitly discuss mitigating factors because, under the pertinent Federal regulations, a deciding authority may, in its discretion, consider mitigating factors. Id. at 636. The Court concluded that, “(t]he hearing officer’s failure to make any findings, coupled with his failure to indicate any awareness that he was explicitly authorized by HUD to exercise his discretion to take into account relevant circumstances, is contrary to our jurisprudence and cannot be sanctioned.” Id. at 637.
Here, the regulations explicitly required the Hearing Officer to take into account mitigating circumstances. See 760 Code Mass. Regs. §5.08(2). Moreover, these factors appear to weigh in favor of Huezo. The first factor — "the severity of the potentially disqualifying conduct" — weighs in favor of Huezo. He timely paid rent for several months prior to withholding rent for two months. Perhaps more importantly, Huezo had a rational basis for withholding rent based on the violations of the Sanitary Code. The second factor is the time elapsed from the time of the disqualifying conduct. This factor may favor Huezo since the Hearing Officer’s decision was rendered over a year after Huezo had withheld rent.
There is no evidence that Huezo had caused any property damage to past residences or was a disturbance to any of his former neighbors. There is also no evidence that Huezo poses a danger to the security of others. Cf. Galeas v. Chelsea Hous. Auth., Civil No. 03-5340-F (Super.Ct. Aug. 8, 2004) (Connolly, J.), 2004 WL 1895053 [18 Mass. L. Rptr. 149] (substantial evidence supported hearing officer’s finding that the plaintiff had assaulted a minor, thus providing a basis for terminating the plaintiffs public housing benefits). Accordingly, the third factor also favors Huezo.
The fourth factor requires that the Hearing Officer consider “the disruption and inconvenience which recurrence would cause [the CHA].” The fifth factor is “the likelihood that the applicant’s behavior in the future will be substantially improved.” An unjustifiable withholding of rent would indeed cause the CHA inconvenience. The record contains no evidence to suggest that Huezo is likely to unjustifiably refuse to pay rent in the future. Instead, the evidence reveals that Huezo only withheld rent at a time when his apartment contained material defects. Thus, the fourth and fifth factors also weigh in favor of Huezo.
Accordingly, the Hearing Officer’s failure to consider any mitigating factors provides an independent basis for reversal.
For the foregoing reasons, the Plaintiffs Motion for Judgment on the Pleadings is ALLOWED and the Chelsea Housing Authority’s Cross Motion for Judgment on the Pleadings is DENIED. The decision of Chelsea Housing Authority is vacated, and it is hereby ORDERED that the Chelsea Housing Authority shall not disqualify the Plaintiff based on a history of nonpayment of rent pursuant to 760 Code Mass. Regs. §5.08(l)(e). The matter is remanded to the Chelsea *27 Housing Authority to immediately review the Plaintiff s application for housing benefits. If determined to be qualified for housing benefits, the Plaintiff shall receive priority according to his original placement had he been qualified at the time of his original application in April of 2007.

Huezo’s counsel at the hearing also acted as his translator.

Several events in the Hearing Officer’s decision are cited as occurring in 2007 although they occurred in 2006.

See Greater Media, 415 Mass. at 417.

See, e.g., Moreo v. Cosco, Inc., 422 Mass. 601, 603-04 (settlements are not admissible as evidence of liability); LePage v. Burmila, 407 Mass. 163, 166 (1990) (offers to compromise are not admissible as admissions because “the law looks with favor upon the settlement of controversies”).

Nile Court will not address the Hearing Officer’s fifth numbered paragraph because it simply restates his ultimate conclusion.

See Cobble, 430 Mass. at 390.