Nestor, J.
Plaintiff John J. Casali, Trustee of the Paul Revere Realty Trust (“Landlord”), rented the third-floor attic apartment at 6 Main Street in Somerville in December, 2012, to Hedi Riahi (“Riahi” or ‘Tenant”) and an unnamed roommate. Riahi was a tenant at will, and the initial monthly rent was $1,300.00. At some point, Riahi’s roommate moved out and another unnamed roommate moved into the apartment. A new agreement was struck between the parties, and the rent was increased to $1,400.00 per month, starting August 1, 2013. Monthly rent at all times included heat, hot water, and gas. The apartment is in the attic of a mixed-use building. The building contains a laundromat on the ground floor, an apartment behind the laundromat, and two apartments above it.
The Tenant paid his rent from the inception of the lease through October, 2013. The Tenant failed to pay his rent for November and December, 2013. On November 8,2013, the Landlord caused a constable to serve the Tenant with a 14-day notice to quit for nonpayment of rent. The notice was dated November 7,2013 and alleged an arrearage of $1,400.00. The tenancy was terminated on November 22, 2013.[3] The Landlord served the Tenant with a summary process summons and complaint on November 26, 2013. Tenant filed an answer on December 16, 2013, alleging he was withholding rent due to, inter alia, the Landlord’s failure to provide adequate heat and hot water.
The Tenant worked nights and was usually home to sleep from 4 AM. until some- *2 tíme in the eárly afternoon. There are only two thermostats to control the heat for the three apartment units. Zone one controlled the heat in apartment one and was located in apartment one. Zone two controlled both the second-floor apartment as well the heat for the Tenants attic apartment located directly above it. Occupants of the second-floor apartment would turn the heat on when they were home but would, however, lower the heat when they left for the day and raise the heat when they returned late in the evening. In addition, there was a hole in the wall measuring approximately 12 inches by 15 inches on top of a window in the Tenants bathroom. These issues directly resulted in the Tenant having inadequate heat from inception of the lease. The Landlord installed a new heater on October 8, 2013. On that date, the heating system was completely turned off to install the new unit. Starting on October 9, 2013, there was adequate heat in the apartment.
The Landlord operated a laundromat on the ground floor of the building. The Tenant’s apartment had adequate hot water through much of the day, but the water use in the laundromat caused there to be inadequate hot water later in the day. The hot water problem was never resolved by the Landlord.
The factors to determine whether a breach of the implied warranty of habitability is material include, but are not limited to: (1) the seriousness of the claimed defects; (2) the length of time the defects persist; (3) whether the landlord or his agent received written or oral notice of the defects; (4) the possibility that the defects could be fixed in a reasonable amount of time; and (5) whether the defects are a result of the tenant’s abnormal use. Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 200-201 (1973).
The trial judge properly found that there was a breach of the implied warranty of habitability because of insufficient heat and hot water in the Tenant’s unit. Damages for a breach of the implied warranty of habitability are assessed from the date the landlord had notice of the condition. See Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 203 (1979).
The Tenant in this case first complained to the Landlord about the lack of heat and hot water in December of 2012 when he initially moved into the unit, stating at trial:
I have moved in in December — mid-December, end of December of last year with another roommate that was already there.... We had problems all winter long about the heat and the hot water. And every time I called Mr. Casali [Landlord], he always gave me a story; why don’t you tell them to put the heat on? Well, the heat is on. I don’t understand why it’s not going up there.
There was sufficient evidence for the trial judge to determine that there was a breach of the implied warranty of habitability throughout the term of the tenancy. In addition, the trial judge’s calculation of damages is warranted as the evidence supports notice to the Landlord in December, 2012 of problems with the heat and hot water.
Judgment affirmed.

 General Laws c. 186, §12 provides, in part:
In case of neglect or refusal to pay the rent due from a tenant at will, fourteen days’ notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the tenancy; provided, that the tenancy of a tenant who has not received a similar notice from the landlord within the twelve months next preceding the receipt of such notice shall not be determined if the tenant, within ten days after the receipt thereof, pays or tenders to the landlord, the landlord’s attorney, or the person to whom the tenant customarily pays rent, the full amount of any rent due.