D. Lawrence Finn *vs.* Victor Peters.

Suffolk.    March 9, 1960. — March 31, 1960.

Present: Wilkins, C.J., Spalding, Williams, Whittemore, & Cutter, JJ.

*Landlord and Tenant*, Control of premises, Common porch, Landlord's liability to tenant or one having his rights. *Evidence*, Relevancy and materiality, Of control of premises. *Practice, Civil*, Requests, rulings and instructions.

A finding in an action that it was an implied term of an oral letting to the plaintiff of the first floor of a three story apartment building by the defendant, who moved into another apartment therein soon after the plaintiff's tenancy began, that the defendant would retain control of a portion of a rear porch of the building where the plaintiff subsequently fell and was injured by reason of a defective railing was warranted by evidence of repairs to the porch made by the defendant, of play there by his children, and of its use by his wife, notwithstanding circumstances indicating that at the time of the letting the plaintiff had been given exclusive use of that portion of the porch.  [625]

At the trial of an action against the landlord of an apartment building by a tenant of an apartment under an oral tenancy ambiguous as to retention of control by the defendant of a portion of a back porch where the plaintiff subsequently fell and was injured by reason of a defective porch railing, there was no error in admitting, "on the question of control," evidence that the defendant repaired the railing after the accident.  [625]

At the trial of an action against the landlord of an apartment building by a tenant injured by reason of a defect in a portion of the premises the control of which by the defendant was in dispute, the charge of the trial judge sufficiently related the question of control to the beginning of the tenancy without his giving an additional instruction on that point requested by the defendant, and the record showed no error prejudicial to the defendant in failing to give a requested instruction that increases in the plaintiff's rent did not "begin or terminate a tenancy." [625-626]

TORT. Writ in the Municipal Court of the City of Boston dated November 6, 1957.

Upon removal to the Superior Court, the action was tried before *Dewing,* J.

*Sturtevant Burr,* (*James B. Winward* with him,) for the defendant.

*Russell J. Coffin & Edward A. Hutchinson, Jr.,* for the plaintiff, submitted a brief.

CUTTER, J. The plaintiff in 1940 rented the first floor of a three story, three family dwelling. The defendant became the landlord in October, 1948, and he soon moved into another apartment in the building. Thereafter there were three increases in the plaintiff's rent, the last in September, 1955. There was no lease. Extending twenty feet along the whole width of the rear of the house was a porch or piazza enclosed only by a railing. At the left end of the porch (as one faces the rear of the house) were three steps and a platform, which "all the tenants had to use," to reach a door, also on the left end of the porch, leading to all three apartments. Anyone coming up the steps to go "to the door . . . into the hall . . . would stay within two or three feet of the hall."

On January 23, 1957, the plaintiff fell and was injured while leaning on the railing at the opposite end of the porch about twenty feet from the door. There was evidence that the railing was "rotted around the nail holes."

Prior "to the accident the defendant had made repairs by putting [in] nails . . . on the porch," and had "replaced a beam under the porch." The record suggests that he also repaired the railing on the day after the accident. Neither the defendant "nor his wife had occasion to be on the piazza," although his wife tied up a rose bush to the railing, went there occasionally to call her children, and left baby carriages there. Otherwise there was no evidence of use of the right end of the porch by adult occupants of the house other than the plaintiff and his wife. Before the defendant became the landlord in 1948, the plaintiff's wife "had the use of the porch to herself." In 1952 or 1953, when the de-

fendant's children were two years old, they began to play on the porch, and did so at the time of the accident.

The plaintiff "never noticed anything wrong with the railing" which "appeared to be in very good condition." The plaintiff's wife, about six months before the accident, had told the defendant that the rail was shaking and broken and that "the children were going to get hurt." She had told the children "to get off the porch, which they did and then came right back." They left toys there and "put their hands all over her clothes which she had hung out" to dry, the "only use she made of the porch." She felt "it was her back porch; and that she had a right to tell them to get off."

In an action to recover for his injuries, the plaintiff had a verdict. The evidence is stated above in the aspect most favorable to the plaintiff. The defendant's bill of exceptions presents for review the propriety of (a) the denial of the defendant's motion for a directed verdict; (b) the admission of certain evidence; and (c) the refusal of certain additional instructions.

1. If the portion of the porch upon which the plaintiff was injured had not been demised to him but remained in the defendant's control, then the defendant was bound to use reasonable care to maintain it in the same condition, in respect of safety, in which it was or appeared to be at the time of the letting. See *Sneckner* v. *Feingold*, 314 Mass. 613, 614; *Stedfast* v. *Rebon Realty Co. Inc.* 333 Mass. 348, 350. If, however, the defendant did not retain control of the place where the plaintiff fell, the defendant "would not be liable for a defective condition . . . to a tenant." *Minkkinen* v. *Nyman*, 325 Mass. 92, 94.

That part of the porch near the door and the area "reasonably incident thereto" (see *Phelan* v. *Fitzpatrick*, 188 Mass. 237, 238; cf. *Gill* v. *Jakstas*, 325 Mass. 309, 311–312) doubtless remained in the control of the landlord as a common means of access to the door. The place where the accident took place, however, was about twenty feet from the door. It was not shown to be "reasonably incident" to any common use of the steps and the door. There was no evi-

dence that the defendant expressly agreed that he would repair the piazza. The only possible basis of liability would be that the defendant by agreement retained control of the porch by the terms of the letting.

In the absence of later agreements (see *Levin* v. *Rose,* 302 Mass. 378, 381) based upon express arrangement or perhaps inferred from the conduct of the parties (see Restatement: Contracts, § 21; Williston, Contracts [3d ed.] § 90; Corbin, Contracts, §§ 564, 574) the terms of the tenancy would be fixed at its inception. See *Miles* v. *Janvrin,* 200 Mass. 514, 517–518. In determining what the oral terms were, weight may be given to the parties' conduct during the tenancy. See *Ruane* v. *Doyle,* 308 Mass. 418, 420–421; *Dreher* v. *Bedford Realty, Inc.* 335 Mass. 385, 389. The repairs made by the defendant and the use of the porch by his children, and by his wife for support of her rosebush and for storing baby carriages, are conduct suggesting a retention of control. Where the terms of a tenancy are established, the landlord by making voluntary repairs does not show that he is bound to repair. See *Conahan* v. *Fisher,* 233 Mass. 234, 238. See also *Barrett* v. *Wood Realty Inc.* 334 Mass. 370, 375. Nevertheless, such repairs by a landlord, or other use by him or those claiming under him, may be evidence of his control, where as here there is ambiguity about the arrangement, at least with respect to a part of the premises not shown to have been physically separate from an area used by others. See *Boday* v. *Thibault,* 337 Mass. 243, 245, and cases cited. A verdict for the defendant could not have been directed despite the circumstances indicating that in 1948 the plaintiff had been given exclusive use of the area.

2. The judge did not err in admitting, "on the question of control," evidence that the defendant repaired the railing after the accident. The authorities already cited show that such evidence was relevant on that question in view of the ambiguity of the oral arrangement.

3. After the charge and some additional instructions, the defendant requested further instructions (a) that the ques-

tion whether the area of the accident had been demised "must be determined as of the beginning of the tenancy" and (b) that "the increasing of rent does not begin or terminate a tenancy." The record does not show that the defendant filed requests for instructions prior to the arguments. See Rule 71 of the Superior Court (1954).

The judge in his additional instructions presented for decision by the jury the question whether the "portion of the piazza . . . was . . . used in common throughout the tenancy." He had previously charged in effect that the actual use and the defendant's actions might bear on the "question of control." The whole tenor of the instructions in fact given sufficiently related the question of control to the beginning of the tenancy. The judge did not improperly suggest (see Denny v. Burbeck, 333 Mass. 310, 313) that a new tenancy arose upon an increase in rent. The record does not show that the increases in rent were discussed at all beyond a brief reference to them in the plaintiff's testimony. It has not been shown that the failure to give an additional instruction on this "single consideration bearing upon an issue" was prejudicial (see Runels v. Lowell Sun Co. 318 Mass. 466, 473–475) or that an additional instruction was "necessary to render substantial justice." Cf. Sullivan v. Sullivan, 333 Mass. 512, 514.

Exceptions overruled.