RICHARD H. CROWELL vs. FREDERICK McCAFFREY.

Suffolk. January 2, 1979. — March 6, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

Landlord and Tenant, Repairs, Habitability, Safety requirements, Landlord's liability to tenant or one having his rights, Control of premises, Porch. Negligence, One owning or controlling real estate.

Review of cases, beginning with Boston Hous. Auth. v. Hemingway, 363 Mass. 184 (1973), in which this court has reconsidered a number of common law rules relating to the obligations of landowners and particularly of landlords. [445-448]

In an action against a landlord by a tenant of a third-floor apartment with a porch outside, evidence that the porch's railing needed painting and contained corroding and rusted nails, and that the railing gave way when the tenant put his hands on it causing him to fall to the ground, together with evidence of violations of the State Building Code and the State Sanitary Code, warranted findings that the dangerous condition on the porch caused the tenant's injuries, that the landlord could have discovered such condition and the unreasonable risk, and could have made the condition safe; if the landlord retained control of the porch, it was error to direct a verdict for him on a count for negligence. [448-449]

In an action against a landlord by a tenant of a third-floor apartment with a porch outside entered only through a window across the hallway from the apartment door, testimony by the tenant that he did not rent the porch, and evidence that after he fell from it when its railing gave way the landlord boarded up the window warranted a finding that the landlord retained control of the porch [449-450]; but such a finding was not compelled, since the landlord's testimony that the porch belonged to the tenant was reinforced by the absence of any evidence that anyone else used it, and by the lack of evidence of any agreement by the landlord to keep the premises in repair [450].

Extension of the warranty of fitness by a landlord to the ordinary residential tenancy at will logically carries with it liability for personal injuries caused by a breach. [450-451]

In the rental of a dwelling unit, there is an implied agreement by the
landlord that the rented unit complies with the minimum stand-
ards prescribed by building and sanitary codes and that he will do
whatever these codes require for compliance during the term of the
renting; such agreement extended to a porch outside an apartment
if the porch was part of the rented unit. [451]

In an action against a landlord by a tenant of a third-floor apartment
with a porch outside from which in 1976 the tenant fell and was
injured when its railing gave way, evidence warranted findings that
the porch was part of the rented premises, and that at the time of
the letting there were violations of the building and sanitary codes;
this court held on appeal that the relevant provisions thereof,
which had been excluded, should have been placed before the jury.
[452]

CIVIL ACTION commenced in the Superior Court on
January 8, 1976.

The case was tried before *Donelan,* J., a District Court
judge sitting under statutory authority.

The Supreme Judicial Court granted a request for di-
rect appellate review.

*William H. Shaughnessy* for the plaintiff.

*Richard H. Pettingell* for the defendant.

BRAUCHER, J. The plaintiff was the tenant of the third-
floor apartment in a three-family house in Dorchester
owned by the defendant. He sued for damages suffered
when the railing of the third-floor porch gave way. At the
close of the plaintiff's case, the judge directed verdicts for
the defendant. The plaintiff appealed from the resulting
judgment, we allowed his application for direct appellate
review, and we now reverse. We hold that there was a
case for the jury on the theory that the defendant was
negligent in maintaining an area left in his control. Al-
ternatively, the jury could find that the porch was part
of the rented premises, and that there was a breach of the
landlord's warranty of compliance with minimum stand-
ards prescribed by the State Building Code and the State
Sanitary Code. On either theory, the relevant provisions
of those codes should have been placed before the jury.

There was evidence of the following facts. The porch in question could only be reached by opening a window across the third-floor hallway from the door to the third-floor apartment. The plaintiff rented the apartment, but not the porch, beginning November 1, 1975. When he rented the apartment he told the defendant he might use the porch in the summertime, and the defendant made no reply. The railing looked old and weather-beaten and needed painting. On the night of December 31, 1975, the plaintiff held a New Year's Eve party at the apartment. Shortly after midnight he went out on the porch to get some air. When he put his hands on the railing it gave way, and he fell to the ground. After the accident the defendant boarded up the window leading to the porch. Photographs showed corroding, rusted nails in the porch railing. The defendant, called as a witness by the plaintiff, testified that the third-floor porch belonged to the third-floor tenant.

The judge excluded from evidence provisions of the State Building Code and the State Sanitary Code.[1] He ruled that the porch was part of the premises rented to the plaintiff, that there was no evidence from which the jury could find that the porch remained under the control of the defendant, that there was no notice of defect or evidence that the defendant was aware of the defect, and that the porch could not be found to be a common area.

1. *The Hemingway case and its progeny.* Beginning with *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184 (1973), this court has reconsidered a number of common law rules relating to the obligations of landowners and particularly landlords. Like courts in other States, we have to some extent departed from the concept of a lease as a conveyance accompanied by independent covenants and subject to the principle, "Let the buyer beware." See Re-

---

[1] Notice was given under Mass. R. Civ. P. 44.1, 365 Mass. 809 (1974), that the plaintiff intended to rely on cited provisions of these Codes relating to the maintenance of porches.

statement (Second) of Property, Landlord & Tenant c. 17, Introductory Note and Reporter's Note (1977); Love, Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability?, 1975 Wis. L. Rev. 19. In part we have relied on statutory developments, in part on the general law of contracts and the law governing the sale of goods, which long ago abandoned the caveat emptor principle. In *Javins* v. *First Nat'l Realty Corp.*, 428 F.2d 1071, 1075 (D.C. Cir.), cert. denied, 400 U.S. 925 (1970), cited in the *Hemingway* opinion, the court drew on the analogy of the warranties of fitness implied in sales of goods. See G. L. c. 106, §§ 2-314, 2-315. Cf. *McDonough* v. *Whalen*, 365 Mass. 506, 511-513 (1974), where we found "no sound reason to treat a builder of houses or other realty structures differently from a manufacturer of chattels."

In the *Hemingway* case this court held "that in a rental of any premises for dwelling purposes, under a written or oral lease, for a specified time or at will, there is an implied warranty that the premises are fit for human occupation." 363 Mass. at 199. The case concerned defenses in actions for eviction and rent, and we did not consider the effect of this "warranty of habitability" on the landlord's liability for injuries. *Id.* at 200 n.13. Three Justices, concurring in the result, thought the *Hemingway* opinion went beyond the necessities of the case. *Id.* at 206 (Quirico, J., concurring in part and dissenting in part). They were willing, however, to find an implied agreement by the landlord, with respect to minimum standards prescribed by laws and regulations such as the State Sanitary Code, "(i) that the rented unit complies with such standards at the time of the renting, and (ii) that he will do whatever such laws, regulations or codes require a landlord to do for compliance with such standards during the term of the renting." *Id.* at 218.

Later cases expanded the liability of a landowner for personal injuries. In *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973), we announced a new rule that occupiers of

land owe a duty of reasonable care to all lawful visitors without regard to the previous distinction between licensees and invitees. Cf. *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696, 711-713 (1974) (liability to trespasser). In *Bouchard* v. *DeGagne*, 368 Mass. 45 (1975), we held that the rule of the *Mounsey* case was to be applied retroactively to cases arising before that decision. Cf. *Poirier* v. *Plymouth*, 374 Mass. 206, 221-223 (1978) (liability of landowner to employee of independent contractor).

More directly relevant here are recent cases dealing with the liability of a landlord for injuries caused by defects in common areas. See *King* v. *G & M Realty Corp.*, 373 Mass. 658, 660-662 (1977), and cases cited. In those cases we held that a landlord has a general obligation to exercise reasonable care in keeping safe the common areas of an apartment building or similar structure for use by his tenants and their visitors, and that the duty is not defined by the safety conditions that existed at the commencement of the tenancy. We also held that violation of a statute or building code provision related to safety was evidence of the landlord's negligence. *Lindsey* v. *Massios*, 372 Mass. 79, 83-84 (1977). *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976). Those cases arose before the effective dates of G. L. c. 186, §§ 15E[2] and 19,[3] but in the

---

[2] Inserted by St. 1972, c. 157, and amended by St. 1974, c. 192, § 3: "Section 15E. An owner of a building shall be precluded from raising as a defense in an action brought by a lessee, tenant or occupant of said building who has sustained an injury caused by a defect in a common area that said defect existed at the time of the letting of the property, if said defect is at the time of the injury a violation of the building code of the city or town wherein the property is situated. Any waiver of this provision in any lease or other rental agreement shall be void and unenforceable."

[3] Inserted by St. 1972, c. 665: "Section 19. A landlord or lessor of any real estate except an owner-occupied two-or three-family dwelling shall, within a reasonable time following receipt of a written notice from a tenant forwarded by registered or certified mail of an unsafe condition, not caused by the tenant, his invitee, or any one occupying through or under the tenant, exercise reasonable care to correct the unsafe condition described in said notice except that such notice need

*King* case we suggested that § 19 was an indication of legislative policy consistent with our ruling. 373 Mass. at 663 n.9. We also noted that the New Hampshire court, "instead of continuing to reformulate the landlord's tort liability by successive steps, has now indicated that ordinary principles of tort liability ought to apply to landlords as to other persons. *Sargent* v. *Ross,* 113 N.H. 388 (1973) (Kenison, C.J.)." *Id.* at 661 n.5.

In two cases involving defects in rented premises, we upheld the liability of the landlord under traditional principles. *Markarian* v. *Simonian,* 373 Mass. 669, 675-676 (1977) (negligent repairs under agreement, injury to tenant's child). *DiMarzo* v. *S. & P. Realty Corp.,* 364 Mass. 510, 514 (1974) (same, injury to tenant's employee). In each case we found it unnecessary to consider the impact of the decisions stemming from the *Hemingway* case. But in the *DiMarzo* case we said: "We might well be inclined toward a reconsideration of the rules of tort liability of lessors under a tenancy at will if the decision in this case required it."

2. *Negligence.* Our recent cases on "common areas" have in effect eliminated any distinction between such areas and other areas in the landlord's control. "Where no 'common passageway' is involved, the rule is that a person in control of a building, or of a part thereof, is required to exercise reasonable care to keep it in such condition that others will not be injured in their persons or property." *Regan* v. *Nelson,* 345 Mass. 678, 680 (1963),

---

not be given for unsafe conditions in that portion of the premises not under control of the tenant. The tenant or any person rightfully on said premises injured as a result of the failure to correct said unsafe condition within a reasonable time shall have a right of action in tort against the landlord or lessor for damages. Any waiver of this provision in any lease or other rental agreement shall be void and unenforceable. The notice requirement of this section shall be satisfied by a notice from a board of health or other code enforcement agency to a landlord or lessor of residential premises not exempted by the provisions of this section of a violation of the state sanitary code or other applicable by-laws, ordinances, rules or regulations."

and cases cited. Thus we need not consider whether the porch in the present case should be treated like a common passageway.

If the landlord retained control of the porch, he was under a duty to exercise reasonable care to keep it in such condition that others would not be injured. Under *King v. G & M Realty Corp.*, *supra*, if a breach of that duty caused injury to a tenant, it made no difference whether the porch was a common area, whether the defect existed at the time of the letting of the property, or whether the defect was a violation of the building code of the city. Cf. G. L. c. 186, § 15E (see note 2, *supra*), which is more limited in scope. We think the evidence, as we have summarized it, warranted findings that the tenant suffered physical harm caused by a dangerous condition on the porch, and that "the landlord by the exercise of reasonable care could have: (1) discovered the condition and the unreasonable risk involved therein; and (2) made the condition safe." Restatement (Second) of Property, Landlord & Tenant § 17.3 (1977).

If the landlord retained control, therefore, it was error to direct a verdict for the defendant on the negligence count in the complaint. Moreover, the evidence would have warranted a finding that there were violations of the State Building Code and the State Sanitary Code (see note 1, *supra*). Such violations would have been evidence of negligence, and the relevant provisions should have been placed before the jury.

3. *The landlord's control.* The question remains whether the landlord retained control of the porch. We think the evidence warranted a jury finding that he did. The plaintiff testified that he did not rent the porch, although he planned to use it and did use it. After the accident the landlord exercised control by boarding up the window leading to the porch. *Finn v. Peters*, 340 Mass. 622, 624-625 (1960). His contrary testimony that the porch belonged to the tenant was of course not conclusive. The porch was not part of the means of access leading exclu-

sively to the tenant's apartment, as in *Sanford* v. *Belemyessi*, 362 Mass. 123, 125 (1972), and *Minkkinen* v. *Nyman*, 325 Mass. 92, 94 (1949).

The defendant relies heavily on *Ludden* v. *Schwartz*, 291 Mass. 320, 322 (1935). There the third-floor tenant fell from the second-floor porch of a three-family house. At the time of the letting to the third-floor tenant, the landlord said the second-floor tenant and the third-floor tenant could use the porch together, and the second-floor tenant agreed. We thought it was plain that either the two tenants were tenants of the porch in common or the third-floor tenant was a licensee of the use of a right appurtaining to the second-floor apartment. There was no similar arrangement in the present case.

Although the evidence warranted a finding that the landlord retained control of the porch, it did not compel such a finding. The landlord's testimony that the porch belonged to the third-floor tenant was reinforced by the absence of any evidence that anyone else used the porch. If the porch was part of the rented premises, our cases prior to the *Hemingway* decision negated any implied covenant that the premises were fit for habitation. *Stumpf* v. *Leland*, 242 Mass. 168, 171 (1922). Moreover, in the absence of any agreement to keep the premises in repair, there was no liability for failure to repair. See *Markarian* v. *Simonian*, 373 Mass. 669, 672 (1977), and cases cited. We must therefore consider how far those rules survive the *Hemingway* decision.

4. *Warranty.* The parties have argued the plaintiff's warranty claim in terms of the scope of the implied warranty of habitability recognized in the opinion of the court in the *Hemingway* case. The defendant argues (1) that breach of the warranty should not give rise to tort damages, (2) that the warranty is limited to defects in facilities vital to the use of the premises as a dwelling, and that the porch was not such a facility, (3) that there was no showing that the defendant had notice of the defect and an opportunity to correct it, and (4) that any

rule imposing liability on the landlord with respect to premises in the tenant's control should be limited to prospective application. We reject each of these arguments.

First, the *Hemingway* opinion referred to *Ingalls* v. *Hobbs*, 156 Mass. 348, 350 (1892), where a warranty of fitness was implied in the leasing of a furnished house or room for a short term. We said that in an urban industrial society that exception "must now become the rule." 363 Mass. at 196. In the *Ingalls* case as in the *Hemingway* case, we did not consider the effect of the warranty of fitness on a landlord's liability for personal injuries. Later cases, however, imposed such liability for breach of the warranty. *Horton* v. *Marston*, 352 Mass. 322, 325 (1967). *Ackarey* v. *Carbonaro*, 320 Mass. 537, 539-540 (1946) (defective porch railing). *Hacker* v. *Nitschke*, 310 Mass. 754, 756-757 (1942). Thus extension of the warranty to the ordinary residential tenancy at will, in accordance with the *Hemingway* decision, logically carries with it liability for personal injuries caused by a breach.

Second, it is true that the *Hemingway* opinion dealt with defects in "facilities vital to the use of the premises for residential purposes." 363 Mass. at 199. But the more limited rule advocated in the concurring and dissenting opinion in the *Hemingway* case is not confined to such "vital" facilities. 363 Mass. at 218, quoted above. See 363 Mass. at 200 n.16; Uniform Residential Landlord and Tenant Act, §§ 2.104(a)(1), 4.101(b) (1972). For present purposes we need not go beyond the more limited rule. We therefore do not consider the scope of the broader warranty of habitability, or the extent to which the porch in the present case was a "vital" facility. We now find in the rental of a dwelling unit, without regard to length of term or presence or absence of furniture, an implied agreement by the landlord that the rented unit complies with the minimum standards prescribed by building and sanitary codes and that he will do whatever those codes require for compliance during the term of the renting. That agreement extended to the porch if the porch was part of the rented unit.

Third, we need not now consider such matters as notice to the landlord of code violations arising after the letting and the time permitted the landlord to correct the violations. See 363 Mass. at 219. See G. L. c. 186, § 19, and Restatement (Second) of Property, Landlord & Tenant § 17.6 (1977), which prescribe a negligence standard. There was evidence warranting findings that the porch was part of the rented premises, and that at the time of the letting there were violations of the building and sanitary codes. There is no suggestion that repairs were made during the two months between the rental and the accident. The relevant provisions of the codes should have been placed before the jury. If that had been done, we think the jury would have been warranted in finding that the landlord, by the exercise of reasonable care, could have discovered whatever violations of the codes the jury found to have existed and could have brought the premises into compliance. We do not pass on the question whether such a finding is essential to liability.

Fourth, we think that in view of the opinions in the *Hemingway* case, decided in 1973, our present decision is neither novel nor surprising. No sufficient reason is shown for refusing to carry out the logic of the *Hemingway* opinions in deciding a case which arose in 1976. See *McIntyre* v. *Associates Financial Servs. Co. of Mass., Inc.,* 367 Mass. 708, 712 (1975).

One feature of the present case departs from the personal property analogy. In sales of personal property, implied warranties of fitness have only limited application to persons who are not merchants. G. L. c. 106, §§ 2-314, 2-315. In *Lantner* v. *Carson,* 374 Mass. 606, 612 (1978), we found a similar limitation in G. L. c. 93A, the Consumer Protection Act, and refused to apply that Act to the sale of a residence by an individual homeowner. Perhaps the exception for "an owner-occupied two-or three-family dwelling" in G. L. c. 186, § 19, can be read to reflect a similar policy. Cf. *Trovato* v. *Walsh,* 363 Mass. 533, 535 (1973) (exception of owner-occupied two-family

house from rent control). But no similar policy is reflected in the building and sanitary codes. If such a policy is to be followed with respect to those codes, we think it needs legislative sanction and definition.

5. *Disposition.* The judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*