Cowin, J.
INTRODUCTION
On June 16, 1993, the plaintiffs, James Steinberg and Paola DiStefano, individually and as parents and next friends of Noah Steinberg, brought suit against the defendants, Drew M. Leff and Susan W. Leff, for negligence, breach of implied warranty of habitability and violations of G.L.c. 93A. This matter is before the Court on the defendants’ motion for partial summary judgment on Count III, violation of G.L.c. 93A, and the plaintiffs’ motion for partial summary judgment on Count II, breach of the implied warranty of habitability. For the reasons discussed below, the plaintiffs’ motion for partial summary judgment is DENIED and the defendants’ motion for partial summary judgment is DENIED.
BACKGROUND
In 1986, the defendants purchased from a builder a single-family residence at 72 Mare Lane in Truro, Massachusetts (the house or the home). The house was used by the defendants as a vacation home for about three full weeks and twenty weekends per year. The defendants also rented the house to others. On August 13, 1990, the minor plaintiffs family began a short-term vacation tenancy at the defendants’ vacation home.
The house consisted of two floors and a basement. One of the second-floor rooms led to a railed and balustered deck, with the rail as the horizontal element and the balusters the vertical elements of the deck. The spacing between the deck’s balusters was nine inches. The defendants put netting around the porch railing. While Ms. Leff stated that the main purpose of the netting was for their children’s safely, Mr. Leff said that the main purpose of the netting was to prevent toys and utensils from falling off the deck.
Similarly, inside the house, the first and second floors were connected by a staircase. The staircase contained two flights of stairs which were connected by a landing midway between the two floors. At the top of the indoor stairwell, where the edge of the second floor met the stairwell, a straight wooden horizontal rail connected the tops of straight wooden balusters which together formed an L-shaped railing at the top of the stairs. The balusters were spaced nine inches apart like the balusters on the deck.
On August 13, 1990, the minor plaintiff (Noah), then twenty months old, his parents and other family members were having breakfast on the second floor of the summer home. Mr. Steinberg, Noah’s father, decided to use the folded wooden table which was standing- against the railing, as a barrier to the stairwell entrance so that Noah would not get injured on the stairs. When Mr. Steinberg removed the table, the openings in the balusters were no longer concealed. As Mr. Steinberg picked up the table and began carrying it to the stairwell entrance, Noah suddenly and without warning ran through the space between two of the railing’s balusters, fell downward through the stairwell and landed on the first floor. As a result, Noah’s skull was fractured in two places. The plaintiffs claim that the nine-inch spacing of the railing’s balusters was not apparent or visible to them prior to Noah’s fall. As stated, the length and width of the railing was covered by rugs and the folded wooden table. The plaintiffs maintain that the defendants were aware of this hazardous condition and that the defendants or individuals acting as their agents placed the rugs and table upon and against the railing in an effort to barricade the hazard. The plaintiffs also argue that the fact that the balusters on the deck were covered with netting indicates that the defendants were aware that balusters nine inches apart were unsafe.
DISCUSSION
Summary judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. *656 Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
I. Plaintiffs’ Motion for Partial Summary Judgment
In the plaintiffs’ motion for partial summary judgment, the plaintiffs state, in part, that the Court should: (1) bar all reference to the State Building Code from the trial of this case as being irrelevant to both the determination of compliance with the negligence standard of care and determination of whether there was a breach of the implied warranty of habitability;[3] (2) rule that only the State Sanitary Code’s restriction on baluster spacing applies in the analysis of whether defendants were negligent; (3) rule that defendants violated the relevant State Sanitary Code provisions by maintaining the nine-inch baluster spacing prior to renting the premises to plaintiffs’ family; and (4) rule, on Count II, breach of implied warranty of habitability, that judgment as to liability should be entered on behalf of the plaintiffs.
Landlord-tenant law has evolved in the Commonwealth from judicial precedents which followed the doctrine of caveat emptor and independent covenants between the landlord and the tenant to the recognition that the essence of the modern day leasing transaction is to provide a dwelling suitable for occupation. See Doe v. New Bedford Housing Authority, 417 Mass. 273, 279 (1994); Boston Housing Authority v. Hemingway, 363 Mass. 184, 196-97 (1973); Young v. Garwacki, 380 Mass. 162, 164-69 (1980). The Supreme Judicial Court has adopted the rule that “(i]n all rentals of premises for dwelling purposes, there is implied a warranty that the premises are fit for human occupation.” Doe, 417 Mass. at 280 citing, Boston Housing Authority, 363 Mass. at 199. According to this warranty of habitability, the landlord warrants “that at the inception of the rental there are no latent [or patent] defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable.” Id. Moreover, the minimum standards of the warranty of habitability are measured by the applicable State Building and Sanitary Codes. Berman & Sons v. Jefferson, 379 Mass. 196, 201 n.9 (1979); See Crowell v. McCaffrey, 377 Mass. 443, 451 (1979) (finding that in the rental of a dwelling unit, without regard to length of term or presence or absence of furniture, the landlord gives an implied agreement that the rented unit complies with the minimum standards prescribed by the State Building and Sanitary Codes and that he will do whatever those codes require for compliance during the term of the renting).[4]
“ ‘Habitability’ is a term of art, and an apartment need not be literally uninhabitable to be in violation of the implied warranty. The ... Sanitary Code ... draws a distinction between a condition, which makes a unit ‘unfit for human habitation (defined as a condition justifying condemnation), 105 Code Mass. Regs. §410.022 (1978), and a condition which ‘may endanger or materially impair the health or safety and well-being of an occupant’ (defined as a condition which may expose those interests to harm), 105 Code Mass. Regs. §410.023 (1978). The latter condition is sufficient to violate the warranty of habitability.”[5] Altschuler v. Boston Rent Board, 12 Mass.App.Ct. 452, 457 (1981) citing, Boston Housing Authy. v. Hemingway, 363 Mass. 184, 200 n.15 (1973) (holding that proof that “Code violations exist which ‘may endanger or materially impair . . .’ would constitute evidence of a material breach . . .”). Id. at 200 n.16. A rented dwelling need not be totally uninhabitable before the implied warranty is violated. Altschuler, 12 Mass.App.Ct. at 458. Therefore, ” ‘[a] dwelling afflicted with a substantial Sanitary Code violation is not habitable,’ in the sense that it is not in compliance with the warranty, Berman & Sons v. Jefferson, [379 Mass. 196, 201-02 (1979)], even though the breach is not so severe as to abate the rent to zero, see McKenna v. Begin, [5 Mass.App.Ct. 304, 313 (1977)] ... , or force the tenant to vacate, see Boston Housing Authy. v. Hemingway,... [363 Mass. at 199-00]." Altschuler, 12 Mass.App.Ct. at 458. Similarly, a statute which defines minimum standards for residential premises may have a direct and significant impact on habitability even though a violation of the statute does not render the premises completely uninhabitable. Id.
The plaintiffs’ claim for breach of implied warranty of habitability is based on a violation of the State Sanitary Code which requires, in pertinent part:
All protective railings . . . shall have balusters placed at intervals of no more than six inches, or any other ornamental pattern between the railing and floor or stair such that a sphere six inches in diameter cannot pass through.
105 Code Mass. Regs. §410.503(c) (1986). As previously stated, the summer home which the plaintiffs rented from the defendants consisted of two floors connected by an indoor stairwell which contained two flights of stairs connected by a landing midway between the two floors. At the top of the indoor stairwell, where the edge of the second floor met the stairwell, a straight wooden horizontal rail connected the tops of straight wooden balusters which together formed an *657 L-shaped railing at the top of the stairs. The balusters of the railing were spaced nine inches apart.
While the plaintiffs argue that the nine-inch spacing of the balusters violated the State Sanitary Code, the defendants assert that the State Building Code is the controlling statute and that any alleged violation of the State Sanitary Code is of no consequence.
The defined “purpose” and “scope” of the State Sanitary Code clearly indicate that the minimum standards of fitness for human habitation were intended to apply to landlords like the defendants. The “purposes” of the State Sanitary Code “[a]re to protect the health, safety and well-being of the occupants of housing and of the general public . . .” 105 Code Mass. Regs. §410.001 (1986). The “scope” section of the State Sanitary Code maintains that “(n]o person shall occupy as owner-occupant or let to another for occupancy any dwelling ... for the purpose of living, sleeping, cooking or eating therein, which does not comply with the requirements of. . .” the State Sanitary Code. 105 Code Mass. Regs. §410.010 (1986).
I am unable to resolve the discrepancy between the nine-inch baluster provision in the State Building Code and the six-inch baluster provision in the State Sanitary Code. It may be that the conflicting provisions are a mistake, although I have no documentation to that effect. There is no apparent rational basis for the marked Code differences in dealing with the same subject matter. The matter of the Code discrepancies is for legislative resolution. Pending such action, I conclude that, as landlords, the defendants are exposed to the higher standard of the State Sanitary Code.
It is undisputed that the premises were built in compliance with the State Building Code which only required that balusters be no more than nine inches apart. See 780 Code Mass. Regs. §2101.11.2 (1980).[6] However, the premises failed to comply with the State Sanitary Code which required that the balusters be no more than six inches apart. As discussed above, case law states that as a landlord, the defendants exposed themselves to an implied warranty of habitability which required them to comply with both the State Building and Sanitary Codes. Therefore, as the plaintiffs contend, the defendants were bound to comply with the six-inch provision in the State Sanitary Code which was designed to protect the health, safety and well-being of the occupants of housing.
While the defendants were in violation of the State Sanitary Code at the time the plaintiffs rented the premises, genuine issues of material fact exist as to whether this violation constitutes a material breach of the implied warranty of habitability. Boston Housing Authority, 363 Mass. at 200 (stating that the existence of a material breach will be a question of fact to be determined in the circumstances of each case). The factors which may provide guidance in the determination of the materiality of an alleged breach of the implied warranty of habitability include:
(a) the seriousness of the claimed defects and their effect on the dwelling’s habitability:[7] (b) the length of time the defects persist: (c) whether the landlord or his agent received written or oral notice of the defects: (d) the possibility that the residence could be made habitable within a reasonable time; and (e) whether the defects resulted from abnormal conduct or use by the tenant.

Id.

As previously mentioned, a condition that “ ‘may endanger or materially impair the health or safety and well-being of an occupant,’ 105 Code Mass. Regs. §410.023 [1986], is sufficient to violate the warranty of habitability." Spaulding v. Young, 32 Mass.App.Ct. 624, 627 (1992) (citations omitted). A “condition which may endanger” means the existence of a condition listed in 105 Code Mass. Regs. §410.750 or any other condition so certified by the board of health to be a violation. 105 Code Mass. Regs. §410.023 (1986). The six-inch baluster requirement for protective railings, 105 Code Mass. Regs. §410.503(c) (1986), is not specifically listed in 105 Code Mass. Regs. §410.750 (1986) as a condition that “may endanger or materially impair the health, or safety and well being” [sic] of an occupant.[8] However, this section of the State Sanitary Code states that “[flailure to include shall in no way be construed as a determination that other violations or conditions may not be found to fall within this category...” Id.
Accordingly, an issue of fact remains as to whether the violation of 105 Code Mass. Regs. §410.503(c) (1986) constitutes a material breach of the implied warranty of habitability. Therefore, the plaintiffs’ motion for summary judgment on Count II must be denied.
II. Defendants’ Motion for Partial Summary Judgment
The defendants move for summary judgment on the plaintiffs’ claim for violation of the consumer protection act, G.L.c. 93A, §2. This claim is based on alleged violations of the implied warranty of habitability and the Attorney General’s regulations regarding the rental of a dwelling unit in an improper condition, 940 Code Mass. Regs. §§3.17(l)(a)l and 3.17(l)(c) (1986).[9] In support of their motion for summary judgment, the defendants argue that since the State Building Code controls rather than the State Sanitary Code, and the underlying basis of the G.L.c. 93A claim is a breach of the State Sanitary Code, summary judgment should be granted on Count III. Since I have concluded that both the State Building and Sanitary Codes apply to the claim for breach of the implied warranty of habitability, a question of fact remains: if the factfinder finds that the defendants breached the implied warranty of habitability and violated 940 Code Mass. *658 Regs. §3.17(1) (1986), the fact question remains of whether these acts constitute an unfair or deceptive act or practice in violation of G.L.c. 93A.[10] Accordingly, summary judgment is denied on Count III.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for partial summary judgment on Count II is DENIED and the defendants’ motion for partial summary judgment on Count III is DENIED.

 This matter is for the trial judge and this Court expresses no opinion on the issue.

 A landlord can be held liable for personal injury resulting from a breach of the warranty of habitability. See Crowell v. McCaffrey, 377 Mass. 443, 451 (1979). In the case at bar, the plaintiffs have a claim for personal injuries.

 The appropriate version of the State Sanitary Code to be used in this case is 105 Code Mass. Regs. §410.000 (1986), the version in existence at the time the plaintiffs rented the house from the defendants in August, 1990. This version of the State Sanitary Code contains the above cited provisions involving fitness for human habitation and conditions which may endanger. See 105 Code Mass. Regs. §§410.022 and 410.023 (1978) (1986).

 The only citation to the State Building Code baluster provision in the defendants’ memorandum is 780 Code Mass. Regs. §210.11.2. This is a definition section of the State Building Code. The correct citation to the pertinent provision is 780 Code Mass. Regs. §2101.11.2 (1980).

 The State Sanitary Code’s minimum standards of fitness for human habitation and endangerment and any relevant local health regulations provide this Court with the threshold requirements that all housing must meet.
Proof of any violation of these regulations would usually constitute compelling evidence that the apartment was not in habitable condition, regardless of whether the evidence was sufficient proof of a constructive eviction under our old case law. However, the protection afforded by the implied warranty of habitability does not necessarily coincide with the Code’s requirements. There may be instances where conditions not covered by the Code regulations render the apartment uninhabitable. Although we have eliminated the defense of constructive eviction in favor of a warranty of habitability defense, a fact situation, which could have demonstrated a constructive eviction, would now be sufficient proof of a material breach of the warranty of habitability, regardless of whether a sanitary code violation .existed or not. On the other hand, there may be instances of isolated Code violations which may not warrant a decision that the premises are uninhabitable. The trial court must have the same broad discretion to determine whether there is a material breach given the special circumstances of each case as that accorded the board of health under Reg. 39 of the Code which allows the board to vary the application of any provision with respect to a particular case.
Boston Housing Authority, 363 Mass. at 200-01 n.16. 11.

 Although 105 Code Mass. Regs. §410.750 (1986) does not specifically list 105 Code Mass. Regs. §410.503(c) (1986) as a “condition which may endanger,” the related provisions for maintaining safe handrails and protective railings are included in 105 Code Mass. Regs. §410.750 (1986). See 105 Code Mass. Regs. §410.750(0(4) (1986) (stating that the failure to maintain a safe handrail or protective railing for every stairway, porch, balcony, roof or similar place, as required by 105 Code Mass. Regs. §§410.503(A) and 410.503(B), constitutes a condition which may endanger or materially impair the health or safety and well-being of an occupant if the “[cjonditions remain uncorrected for a period of five or more days following the notice to or knowledge of the owner of said condition(s) . . .” 105 Code Mass. Regs. §410.750(0) (1986).

 The Attorney General’s Regulations, 940 Code Mass. Regs. §3.17 (1986) state in pertinent part:
(1) It shall be an unfair or deceptive act or practice for an owner to:
(a) Rent a dwelling unit which, at the inception of the tenancy
1. contains a condition which amounts to a violation of law which may endanger or materially impair the health, safety, or well-being of the occupant: or
2. is unfit for human habitation;
(c) Fail to disclose to a prospective tenant the existence of any condition amounting to a violation of law within the dwelling unit of which the owner had knowledge or upon reasonable inspection could have acquired such knowledge at the commencement of the tenancy; . . .

 Plaintiffs in their Supplemental Memorandum of Law in response to Order Dated March 26, 1997 have raised an issue of whether the defendants were engaged in trade or commerce. As this matter was not raised by either party in their original memoranda or in oral argument, the Court renders no opinion on this question.