FRANCINE M. FLETCHER[1] & others[2] *vs.* STEPHEN F. LITTLETON.

No. 05-P-1194.

Plymouth. April 10, 2006. - January 4, 2007.

Present: PERRETTA, TRAINOR, & KATZMANN, JJ.

*Landlord and Tenant,* Habitability. *Damages,* Breach of implied warranty of habitability. *Strict Liability.*

In a civil action arising from a fire in a house owned by the defendant that resulted in the death of three of the plaintiffs' children and injury to two others, the use of knob-and-tube wiring with spray-in insulation in the house (as to the risks of which the defendant lacked actual or constructive knowledge) did not constitute a breach of the implied warranty of habitability, where the combination of wiring and insulation, which was installed prior to the effective date of regulations prohibiting such a combination, did not violate the Massachusetts electrical code or more general provisions of the State sanitary or building codes. [24-27]

CIVIL ACTION commenced in the Superior Court Department on May 23, 1995.

The case was heard by *Charles J. Hely,* J.

*Sara J. Trezise (Michael R. Rezendes* with her) for the plaintiffs.

*Michael R. Byrne (Michael J. Mazurczak* with him) for the defendant.

*Patrick T. Jones, J. Michael Conley, & Benjamin R. Zimmermann,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

TRAINOR, J. A fire in a house owned by the defendant, Stephen

---

[1] Individually; as coadministratrix of the estates of Maria Vazquez, Paul Fletcher, and Stephen Fletcher; and as mother and next friend of Dominique Vazquez and Kristin Lynch.

[2] Michael G. Vazquez, individually and as coadministrator of the estate of Maria Vazquez, and as father and next friend of Dominique Vazquez; and George Fletcher, as coadministrator of the estates of Stephen Fletcher and Paul Fletcher.

F. Littleton, resulted in the death of three of the plaintiffs' children and injury to two others. The plaintiffs sued the defendant for, among other theories, a breach of the implied warranty of habitability, alleging that the fire was caused by the defendant's failure to keep the wiring in the house in compliance with the applicable codes. Specifically, the plaintiffs allege that a combination of antiquated wiring hardware and spray-in foam insulation inside the living-room wall of the house led to the fire. After a jury-waived trial, a Superior Court judge found that the cause of the fire was, in fact, the wiring and insulation. The judge held, however, that because the defendant did not know and could not reasonably have known about the danger, the plaintiffs could not recover.

The plaintiffs argue on appeal, as they did at trial, that a cause of action for the breach of the implied warranty of habitability resulting from a hidden defect on the premises and resulting in death or injury does not require a finding of negligence in order to recover damages. Specifically, the plaintiffs argue that the defendant was in violation of the relevant State codes and that the violations resulted in the deaths and injuries of the children. Such code violations, they argue, breach the warranty of habitability; further, the plaintiffs contend that fault, or a showing of negligence, does not belong in an analysis of the warranty. We conclude that the record does not support any finding that the wiring and insulation violated any provisions of the State building, electrical, or sanitary codes. We affirm the judgment.[3]

*Facts.* We recite the relevant facts as found by the trial judge. Francine M. Fletcher and Michael G. Vazquez were tenants in the house in Scituate, owned by the defendant; their children, Paul and Stephen Fletcher, Maria and Dominique Vazquez, and Kristin Lynch, lived in the house with them. On April 4, 1995, while Francine and Michael were out to dinner and the children were at home with a babysitter, a fire broke out inside the living room wall. Maria, Paul, and Stephen were killed in the fire, and Dominique and Kristin were injured.[4]

The house, which was built prior to the 1930's, was purchased

---

[3]We acknowledge the amicus brief of the Massachusetts Academy of Trial Attorneys.

[4]There is no indication that the babysitter was in any way responsible for

by the defendant's grandparents in the 1950's, and was later owned by the defendant's parents. They used the house as a summer vacation home until 1977, when they converted it to year-round use. The defendant inherited the house from his parents after their deaths in 1987 and 1988.

When the defendant's parents winterized the house in 1977, they had the walls filled with spray-in insulation but did not change the original wiring. That wiring was of the knob-and-tube variety, commonly used at the time the house was constructed and still frequently in use, but no longer allowed to be used in repairs or new installations.[5] There was testimony at trial that knob-and-tube wiring creates considerable heat and that the presence of spray-in insulation can prevent the ventilation of that heat and increase the risk of fire. The defendant was not aware of the type of wiring in use in the house, of the presence of the spray-in insulation, or of the potential risk posed by the combination of the wiring and the insulation.[6]

After a careful review of considerable evidence, the trial judge found the fire began in the living-room wall and was caused by the heat build-up from a combination of knob-and-tube wiring and spray-in insulation. The judge also found that this may have been exacerbated by a light fixture elsewhere in the house that was exposed to water and could, consequently, have led to an increased load on the wiring at the origin of the fire.

*Discussion.* The plaintiffs argue that despite the defendant's lack of actual or constructive knowledge of the risks posed, the use of knob-and-tube wiring with spray-in insulation in the house owned by the defendant constituted a per se violation of

---

the deaths or injuries.

[5]The Massachusetts electrical code, 527 Code Mass. Regs. § 12.00 (1993), which incorporates the National Electrical Code with some modifications, prohibits the use of knob-and-tube wiring in repairs and new installations but does not require that original knob-and-tube wiring be removed. The question whether the presence of such wiring in a structure constitutes a violation of any statute or regulation is central to the plaintiffs' argument, and we address it in detail, *infra.*

[6]The trial judge found, and the plaintiffs do not here contest, that the danger of combining knob-and-tube wiring with spray-in insulation is a matter of specialized knowledge of which a nonelectrician, like the defendant, would not be aware.

the warranty of habitability. "During the rental of any premises for residential purposes, whether pursuant to a written or oral lease and whether for a specified term or as a tenant at will, there exists an implied warranty of habitability requiring that the premises are fit for human occupation. This means that at the inception of the rental there are no latent [or patent] defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property liveable." (Quotations and citations omitted.) *Jablonski* v. *Casey*, 64 Mass. App. Ct. 744, 746 (2005). The Supreme Judicial Court has also held that breach of the implied warranty of habitability gives rise to liability for personal injuries caused as a result of the breach. See *Crowell* v. *McCaffrey*, 377 Mass. 443, 451 (1979).

The plaintiffs argue two theories of liability. First, they argue that the combination of the wiring and insulation was a violation of the Massachusetts building code, 780 Code Mass. Regs. § 2700 (1991), which requires that all wiring comply with the Massachusetts electrical code, 527 Code Mass. Regs. § 12.00 (1993) (MEC). Alternatively, they argue that even if the wiring was not in violation of the MEC, it violated the more general provisions of the building code requiring rented premises to be kept in a "safe and sanitary condition." 780 Code Mass. Regs. § 104.1 (1990). Similarly, the plaintiffs urge that the defendant's property was in violation of the State sanitary code, specifically 105 Code Mass. Regs. §§ 410.351 and 410.750(L) (1994), which provisions require an owner to "install in accordance with accepted . . . electrical wiring standards . . . all electrical fixtures, outlets and wiring . . . ." 105 Code Mass. Regs. § 410.351. "A dwelling afflicted with a substantial Sanitary Code violation is not habitable." *Berman & Sons, Inc.* v. *Jefferson*, 379 Mass. 196, 201-202 (1979). Either theory, they argue, would constitute a breach of the warranty of habitability.

The plaintiffs accept the trial judge's finding that the defendant had no knowledge of the potentially dangerous combination of wiring and insulation in the house, and was therefore not negligent. They argue, however, that the warranty of habitability imposes strict liability for injuries resulting from

its breach,[7] and proof of the breach is found in the violation of the MEC or the State sanitary code. The trial judge, however, found that the combination of the wiring in the house and the spray-in insulation was an "acceptable and common building renovation practice at the time"; we view this as an implicit finding that the house was not in violation of the MEC. The plaintiffs contend, nonetheless, that the wiring was in violation of the MEC, citing portions of the National Electrical Code (which the MEC incorporates by reference; see note 5, *supra*) that indicate that knob-and-tube wiring should not be used in a hollow area filled with spray-in insulation.[8] The National Electrical Code states clearly, however, that it applies only to new installations and repairs and does not require that existing wiring be brought up to compliance with this later adopted provision of the code. See Rule 7 of the National Electrical Code, as appearing in 527 Code Mass. Regs. § 12.00.

Nor did the plaintiffs prove at trial that the wiring was in violation of those more general portions of the sanitary code or the MEC that require electrical fixtures to be "reasonably safe to persons and property." See Rule 1 of the National Electrical Code, as appearing in 527 Code Mass. Regs. § 12.00. Although the trial judge found that the wiring, perhaps combined with a damp light fixture, caused the fire, he did not find that the wiring was patently unsafe; because of its accepted use under the

[7]In its amicus brief, the Massachusetts Academy of Trial Attorneys urges us to "explicitly confirm that breach of the implied warranty of habitability gives rise to liability for resulting injuries without further proof of negligence." The amicus seems to argue that liability under the warranty of habitability should be imposed in the same manner as liability would be imposed for a breach of the implied "warranty of merchantability" under the Uniform Commercial Code. Applying this theory of liability to residential property would result in warranty liability being "imposed even where the product was properly designed, manufactured, or sold; conformed to industry standards; and passed regulatory muster, and even where the consumer used the product negligently." *Haglund* v. *Philip Morris Inc.*, 446 Mass. 741, 748 (2006). It would not be necessary to prove a substantial violation of the sanitary code or other codes promulgated to ensure the habitability of premises. See *Jablonski* v. *Casey*, 64 Mass. App. Ct. at 746. We decline to adopt this theory of liability for residential property.

[8]The plaintiffs acknowledge that the building code that prohibited spray-in insulation in conjunction with knob-and-tube wiring came into effect in 1987, ten years after the house was winterized.

MEC, he could not so find. Likewise, there was no proof at trial that the wiring was otherwise defective so as to constitute a breach of the implied warranty of habitability. See *Crowell* v. *McCaffrey*, *supra* at 451.

Additionally, the judge found that neither Francine nor any other member of the household brought any problems with the electrical system to the defendant's attention. During the course of Francine and Michael's tenancy, in December, 1991, a licensed master electrician came to the house to do some repairs. He was not aware that there was knob-and-tube wiring. He recommended the installation of a new main circuit breaker box, an upgrade of which the defendant approved. He did not suggest any further repairs.

Further, we are unconvinced that the general safety language relied upon by the plaintiffs was intended to create a specific requirement that landlords renovate old wiring that is otherwise not prohibited by the MEC. It is a canon of statutory construction that general language must yield to more specific language. *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 18 (2000). Here, we must conclude that if the presence of knob-and-tube wiring with spray-in insulation had been intended to constitute a per se code violation, the MEC's prohibition on such wiring would not have been limited to repairs and new installations.

The plaintiffs' argument before this court rests on the existence of a violation of the relevant building, sanitary, and electrical codes. The plaintiffs rely on *Crowell* v. *McCaffrey*, *supra* at 451, which states: "We now find in the rental of a dwelling unit . . . an implied agreement by the landlord that the rented unit complies with the minimum standards prescribed by building and sanitary codes and that he will do whatever those codes require for compliance during the term of the renting." No such violation was proved at trial, and because we see no such violation on the record or in the arguments before us, there was no error.

*Judgment affirmed.*